No. 24-1954

In the United States Court of Appeals
for the Fourth Circuit

FREDERICK L. ALLEN and NAUTILUS PRODUCTIONS, LLC,

*Plaintiffs-Appellees*,

v.

JOSHUA H. STEIN, Governor of the State of North Carolina, in his
official capacity, et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of North Carolina

**OPENING BRIEF OF DEFENDANTS-APPELLANTS**

JEFF JACKSON
Attorney General

Ryan Y. Park
Solicitor General

Nicholas S. Brod
Deputy Solicitor General

Kaeli E. Czosek
Solicitor General Fellow

Olga E. Vysotskaya de Brito
Senior Deputy Attorney General

*Counsel for Defendants-Appellants*

North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6400

# CORPORATE DISCLOSURE STATEMENT

I certify, pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, that no appellant is in any part a publicly held corporation, a publicly held entity, or a trade association, and that no publicly held corporation or other publicly held entity has a direct financial interest in the outcome of this litigation.

Dated:  March 26, 2025                    /s/ Nicholas S. Brod
                                          Nicholas S. Brod

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iii

JURISDICTIONAL STATEMENT ....................................................... 1

ISSUES PRESENTED ........................................................................... 2

INTRODUCTION ................................................................................. 3

STATEMENT OF CASE ....................................................................... 6

    A.    Allen sues the Department for copyright infringement......... 6

    B.    The district court allows some of Allen's claims to proceed, but this Court reverses and remands with instructions to dismiss ...................................................................................... 9

    C.    On remand, the district court reopens the case to allow Allen to amend his complaint ................................................. 10

    D.    The district court strikes or dismisses all of Allen's amended complaint except his claim under *Georgia* ........... 16

SUMMARY OF ARGUMENT ............................................................. 22

ARGUMENT ...................................................................................... 25

Standard of Review .......................................................................... 25

Discussion........................................................................................ 26

I.   The District Court Erred in Reopening the Case to Allow Allen to Amend His Complaint ....................................................................... 26

    A.   The only way for Allen to assert a *Georgia* claim was under Rule 60(b) and Rule 15(a)—rules that the district court did not properly consider ............................................................ 26

    B.   Under the correct legal standard, there was no basis for reopening the case and granting leave to amend ................... 33

II.  The District Court Erred in Holding That Allen Alleged a Copyright Claim Abrogating State Sovereign Immunity under *Georgia* ..................................................................................... 38

    A.   Allen failed to plausibly allege copyright infringement that violated the Due Process Clause ............................................ 38

        1.   Allen failed to plausibly allege recklessness ................ 39

        2.   Allen had adequate state remedies ............................... 43

    B.   Even if Allen had adequately alleged a due-process violation, abrogation under *Georgia* was unavailable on these facts .... 49

CONCLUSION ....................................................................................... 59

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackermann v. United States*,
  340 U.S. 193 (1950) .................................................................37

*Aikens v. Ingram*,
  652 F.3d 496 (4th Cir. 2011) (en banc) ....................25, 29, 36

*Alaska v. EEOC*,
  564 F.3d 1062 (9th Cir. 2009) .......................................56, 57

*Allen v. Cooper*,
  244 F. Supp. 3d 525 (E.D.N.C. 2017) .........................3, 9, 12

*Allen v. Cooper*,
  895 F.3d 337 (4th Cir. 2018) ..................................... passim

*Allen v. Cooper*,
  589 U.S. 248 (2020) ................................................... passim

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
  326 F.3d 505 (4th Cir. 2003) .........................................29

*Am. Shooting Ctr., Inc. v. Secfor Int'l*,
  No. 13-cv-1847, 2016 WL 3952130 (S.D. Cal. July 22, 2016) ..............54

*BM Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) ...............................................39

*Campinha-Bacote v. Regents of the Univ. of Mich.*,
  No. 15-cv-330, 2016 WL 223408 (S.D. Ohio Jan. 19, 2016) ................54

*Carlson v. Boston Sci. Corp.*,
  856 F.3d 320 (4th Cir. 2017) .......................................25, 37

*City of Boerne v. Flores*,
  521 U.S. 507 (1997) .............................................50, 51, 58

iii

*Corum v. Univ. of N.C.*,
   413 S.E.2d 276 (N.C. 1992) ................................................ 46

*Daulatzai v. Maryland*,
   97 F.4th 166 (4th Cir. 2024) ........................................ 30, 32

*Durham v. Kelley*,
   82 F.4th 217 (3rd Cir. 2023) ............................................. 56

*Fauconier v. Clarke*,
   966 F.3d 265 (4th Cir. 2020) ............................................ 55

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savings Bank*,
   527 U.S. 627 (1999) ................................................. 44, 45

*Hudson v. Palmer*,
   468 U.S. 517 (1984) ..................................................... 46

*Humphrey v. Humphrey*,
   434 F.3d 243 (4th Cir. 2006) ............................................ 33

*Hutto v. S.C. Ret. Sys.*,
   773 F.3d 536 (4th Cir. 2014) ............................................ 12

*Kemp v. United States*,
   596 U.S. 528 (2022) ................................................. 30, 33

*Kimel v. Fla. Bd. of Regents*,
   528 U.S. 62 (2000) ...................................................... 50

*Knick v. Twp. of Scott*,
   588 U.S. 180 (2019) ..................................................... 12

*Laber v. Harvey*,
   438 F.3d 404 (4th Cir. 2006) (en banc) ............................. 30, 31

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982) ................................................. 47, 48

*Lyons P'Ship, L.P. v. Morris Costumes, Inc.*,
   243 F.3d 789 (4th Cir. 2001) ....................................... 39, 43

*Marino v. Pioneer Edsel Sales, Inc.*,
   349 F.3d 746 (4th Cir. 2003) ............................................................. 28

*McClary v. O'Hare*,
   786 F.2d 83 (2d Cir. 1986) ................................................................ 47

*McDaniel v. Syed*,
   115 F.4th 805 (7th Cir. 2024) ........................................................... 56

*Midgett v. N.C. Highway Comm'n*,
   132 S.E.2d 599 (N.C. 1963) .............................................................. 45

*Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents*,
   633 F.3d 1297 (11th Cir. 2011) ......................................... 22, 48, 53, 54

*Nev. Dep't of Human Res. v. Hibbs*,
   538 U.S. 721 (2003) ........................................................................... 50

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*,
   974 F.2d 502 (4th Cir. 1992) ....................................................... 36, 37

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
   506 U.S. 139 (1993) ............................................................................. 1

*Rittenhouse v. DeKalb Cnty.*,
   764 F.2d 1451 (11th Cir. 1985) (en banc) ................................... 47, 48

*Scott v. Cricket Commc'ns, LLC*,
   865 F.3d 189 (4th Cir. 2017) ....................................................... 32, 33

*Smith v. State*,
   222 S.E.2d 412 (N.C. 1976) .............................................................. 45

*State Nat'l Ins. Co. v. Cnty. of Camden*,
   824 F.3d 399 (3d Cir. 2016) ............................................................. 28

*U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*,
   899 F.3d 236 (4th Cir. 2018) ............................................................ 38

*United States ex rel. Citynet, LLC v. Gianato*,
   962 F.3d 154 (4th Cir. 2020) ............................................................ 41

*United States ex rel. Nicholson v. MedCom Carolinas, Inc.*,
  42 F.4th 185 (4th Cir. 2022) ............................................. 26, 31, 32, 35

*United States v. Aramony*,
  166 F.3d 655 (4th Cir. 1999) ............................................. 42

*United States v. Georgia*,
  546 U.S. 151 (2006) ................................................. passim

*United States v. Welsh*,
  879 F.3d 530 (4th Cir. 2018) ............................................. 30

*Waetzig v. Halliburton Energy Servs., Inc.*,
  145 S. Ct. 690 (2025) ............................................. 29

*Wright v. North Carolina*,
  787 F.3d 256 (4th Cir. 2015) ............................................. 26

*Zinermon v. Burch*,
  494 U.S. 113 (1990) ............................................. 43

*Zito v. N.C. Coastal Res. Comm'n*,
  8 F.4th 281 (4th Cir. 2021) ............................................. 18

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1 ............................................. 39

U.S. Const. amend. XIV, § 5 ............................................. 50

**Statutes**

17 U.S.C. § 106 ............................................. 18

17 U.S.C. § 107 ............................................. 43

17 U.S.C. §§ 107-09 ............................................. 19

17 U.S.C. § 501(a)-(b) ............................................. 19

17 U.S.C. § 511 ............................................. 50

28 U.S.C. § 1291 ............................................. 1

43 U.S.C. § 2105(c) ......................................................................6

N.C. Gen. Stat. § 121-22 ...........................................................6

N.C. Gen. Stat. § 121-25(b) (2015) ......................................7, 8

N.C. Gen. Stat. § 132-1(a) ....................................................7, 48

N.C. Gen. Stat. § 132-1(b) ....................................................7, 48

N.C. Gen. Stat. § 143-291(a) ...................................................46

**Session Laws**

N.C. Sess. Law 2016-94, § 16.2 ...................................................8

N.C. Sess. Law 2023-70, § 11 ......................................................8

**Rules**

Fed. R. Civ. P. 8(d)(3) ...............................................................36

Fed. R. Civ. P. 15(a)........................................................... passim

Fed. R. Civ. P. 41(a)(1)(A)(ii) ............................................12, 28

Fed. R. Civ. P. 54(b).......................................................... passim

Fed. R. Civ. P. 60(b)(1)-(5) .......................................................29

Fed. R. Civ. P. 60(b)(6) .................................................... passim

**Other Authorities**

*Intersal, Inc. v. Wilson*, Final Order & Judgment,
  No. 2015-cvs-9995, Dkt. 400 (N.C. Bus. Ct. Dec. 13, 2024).................45

Pet. for Cert., *BLOM Bank SAL v. Honickman*,
  No. 23-1259 (U.S. May 29, 2024) ......................................30

Transcript of Oral Argument, *Allen v. Cooper*,
  589 U.S. 248 (2020) (No. 18-877) .................................14, 34

vii

## JURISDICTIONAL STATEMENT

Frederick L. Allen and Nautilus Productions, LLC (collectively, Allen) filed a second amended complaint against the State of North Carolina; its Governor and Attorney General, in their official capacities; and one of its agencies, the Department of Natural and Cultural Resources (collectively, the Department).  JA 85, JA 88.  Allen also sued various Department officials in their individual and official capacities.  JA 85, JA 88-90.

As relevant here, Allen brought a claim against the Department and Department officials in their official capacities for copyright infringement.  JA 112-113, JA 114-117.  The Department and its officials moved to dismiss on the basis of sovereign immunity.  JA 261.  The district court denied the motion.  JA 303-304.

The Department and its officials timely filed a notice of appeal.  JA 316-317.  This Court has jurisdiction under 28 U.S.C. § 1291 and the collateral-order doctrine.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993).

1

## ISSUES PRESENTED

I.    Did the district court err in reopening this case and granting Allen leave to amend his complaint?

II.   Did the district court err in holding that Allen alleged a violation of federal copyright law that abrogates state sovereign immunity under *United States v. Georgia*, 546 U.S. 151 (2006)?

2

**INTRODUCTION**

This appeal marks the latest chapter in a decade-long copyright dispute over photographs and video footage that Allen took documenting the Department's efforts to recover Blackbeard's sunken pirate ship, the *Queen Anne's Revenge*.

Seven years ago, this Court reversed the district court below, which had allowed Allen's federal copyright claims to proceed against the Department despite its sovereign immunity. *Allen v. Cooper*, 244 F. Supp. 3d 525 (E.D.N.C. 2017), *rev'd*, 895 F.3d 337 (4th Cir. 2018). This Court remanded with instructions to dismiss. *Allen*, 895 F.3d at 358. The Supreme Court affirmed this Court's judgment. *Allen v. Cooper*, 589 U.S. 248 (2020).

The Supreme Court's decision should have been the end of this case. Instead, the district court reopened the litigation and allowed Allen to amend his complaint to assert a new legal theory that he had never before advanced: that the Department's alleged copyright infringement also violated the Fourteenth Amendment's Due Process Clause and thus abrogated state sovereign immunity under *United States v. Georgia*, 546 U.S. 151 (2006).

3

In reaching this conclusion, the district court erred twice over. It first erred by allowing Allen to amend his complaint years after this Court ordered his claims dismissed—on a theory that Allen could have raised in 2015, when he originally filed this lawsuit. In so doing, the district court far exceeded Rule 60(b)'s and Rule 15(a)'s limitations on reopening final judgments and granting leave to amend.

The district court was also wrong on the merits. Allen did not—and cannot—plausibly allege an actual violation of the Fourteenth Amendment. A copyright violation that also violates due process requires both reckless infringement and lack of an adequate remedy. Allen cannot satisfy either element here. This Court's prior decision in this case already rejected Allen's recklessness theory, foreclosing Allen's attempt to relitigate that issue through an amended pleading. And North Carolina state courts were open to offer Allen an adequate remedy for any infringement.

But even if Allen had alleged a due-process violation, he still could not establish a *Georgia* claim. To abrogate state sovereign immunity under Section 5 of the Fourteenth Amendment, Congress must ordinarily show that its abrogation is congruent and proportional to

4

constitutional violations committed by States. *Georgia* is an exception to this rule. Congruence and proportionality are not required, *Georgia* holds, when, on the facts of a particular case, the "*same conduct*" by a State that violates a federal statute also violates the Fourteenth Amendment. *Georgia*, 546 U.S. at 157 (emphasis added).

Below, the district court held that Allen plausibly alleged that the Department violated the Copyright Act by directly infringing his copyrighted works. But to find a due-process violation, the district court did not look to this alleged copyright infringement. Rather, the court held that the Department violated due process in a different way: by failing to afford Allen a pre-deprivation hearing before it infringed.

That mismatch between the alleged statutory violation and the alleged constitutional violation forecloses Allen's *Georgia* claim. In reaching a contrary conclusion, the district court conceded that its decision split with the other courts to have considered this issue, which have held that the state copyright infringement *itself* must violate the Fourteenth Amendment. Yet the district court's ruling here bypassed this requirement, effectively making an end-run around the test for congruence and proportionality under Section 5—a test that, as the

5

Supreme Court already held earlier in this case, the Copyright Act fails. *Allen*, 589 U.S. at 266.

This Court should reverse and remand with instructions to dismiss and close the case.

## STATEMENT OF CASE

### A.  Allen sues the Department for copyright infringement.

In 1996, a private marine salvager, Intersal, Inc., discovered the sunken remains of *Queen Anne's Revenge* off the North Carolina coast. JA 91-92.  Under federal and state law, the State owns the wreck and all its remains.  43 U.S.C. § 2105(c); N.C. Gen. Stat. § 121-22.  The Department and Intersal entered into an agreement to recover the wreckage.  JA 93.  Intersal, in turn, retained Allen to document the Department's excavation process.  JA 94.  Allen registered copyrights for his photographs and video footage of the recovery.  JA 95-96.

In 2013, Allen accused the Department of copyright infringement, citing a few images that were posted online.  The parties settled the dispute.  JA 101-102.  Under the settlement agreement, the Department could display "non-commercial digital media" of the shipwreck on its website.  JA 130.  The settlement agreement further

6

provided that the Department could "mak[e] records available to the public" under North Carolina's public records law, N.C. Gen. Stat. § 132-1 *et seq.* JA 131. The State's public records law, in turn, provided at that time—as it still does today—that "all . . . photographs [and] films . . . made or received pursuant to law . . . in connection with the transaction of public business by any agency of North Carolina" are "public records," and that it is "the policy of [the] State that the people may obtain copies of . . . public records . . . free or at minimal cost unless otherwise specifically provided by law." N.C. Gen. Stat. § 132-1(a), (b).

After the parties settled, Allen alleged that the Department resumed its copyright infringement. Specifically, Allen alleged that the Department published five of his videos on its YouTube channel and included one of his photographs in a newsletter about North Carolina's maritime museums. JA 41-42, JA 105-106. Allen also claimed that the State passed a law, N.C. Gen. Stat. § 121-25(b), seeking to insulate itself from liability for this alleged infringement. JA 103-105. The statute clarified that the State's preexisting public records law included images of shipwrecks in the State's custody and provided that "[t]here

7

shall be no limitation on the use" of such images. N.C. Gen. Stat. § 121-25(b) (2015).[1]

In 2015, Allen sued the Department and various of its officials and filed a first amended complaint shortly thereafter. The first three counts of that complaint are relevant here. In Count I, Allen sought a declaratory judgment that section 121-25(b) was unenforceable because it was preempted by the Copyright Act. JA 46-47. In Count II, Allen sought damages and injunctive relief for direct copyright infringement. JA 48-49. In Count III, Allen brought a damages claim under 42 U.S.C. § 1983, alleging that section 121-25(b) effected a taking of his property and violated his due-process rights. JA 49-50. Allen also brought claims against a nonprofit company, Friends of Queen Anne's Revenge (Friends of QAR), that was established to raise money for the wreck's excavation and preservation. JA 36.

---

[1]    In 2016, the state legislature amended the law to remove the "no-limitation-on-use" provision. N.C. Sess. Law 2016-94, § 16.2. The legislature repealed the remainder of the law in 2023. N.C. Sess. Law 2023-70, § 11.

8

Shortly after Allen filed his complaint, the Department

voluntarily removed the allegedly infringing images from their online

locations. *Allen*, 895 F.3d at 354.

### B. The district court allows some of Allen's claims to proceed, but this Court reverses and remands with instructions to dismiss.

The Department and its officials moved to dismiss based on

sovereign, qualified, and legislative immunity. In a 2017 opinion, the

district court granted that motion only in part. *Allen v. Cooper*, 244 F.

Supp. 3d 525 (E.D.N.C. 2017). After opining that the Supreme Court's

sovereign immunity jurisprudence is "flawed and contrary to the

fundamental nature and meaning of the Constitution," the district court

declined to dismiss Counts I and II of Allen's complaint—the

constitutional challenge to section 121-25(b) and the federal copyright

claims. *Id.* at 535, 545-46. The district court dismissed Allen's

remaining claims. *Id.* at 546.

The Department and its officials appealed the district court's

order denying their immunity defenses. This Court reversed. *Allen v.*

*Cooper*, 895 F.3d 337, 343 (4th Cir. 2018). The Court first held that

Congress did not validly abrogate state sovereign immunity from

9

copyright claims. *Id.* at 347-54. The Court also rejected Allen's

argument that the *Ex parte Young* exception to sovereign immunity

applied. *Id.* at 354-55. The Court finally held that qualified and

legislative immunity collectively barred all of the claims against

Department officials sued in their individual capacities. *Id.* at 356-58.

Thus, the Court "reverse[d] each of the district court's rulings on

immunity" and "remand[ed] with instructions" that the district court

dismiss "without prejudice" Allen's claims against the Department and

dismiss "with prejudice" the remaining individual-capacity claims. *Id.*

at 358.

### C. On remand, the district court reopens the case to allow Allen to amend his complaint.

In August 2018, the district court entered an order implementing

this Court's mandate. JA 53. The order stated that Allen's claims

against the Department were dismissed without prejudice and that

Allen's individual-capacity claims against Department officials were

dismissed with prejudice. JA 53.

One defendant remained: Friends of QAR. Allen moved to stay

the litigation on the ground that he planned to file a petition for a writ

of certiorari in the Supreme Court. JA 17. The district court stayed the

case pending the resolution of Supreme Court proceedings.  JA 17.  The
Supreme Court granted review to decide whether Congress validly
abrogated state sovereign immunity from copyright claims.  The
Supreme Court affirmed this Court's judgment that Congress had not
validly abrogated state sovereign immunity over claims of this kind.
*Allen v. Cooper*, 589 U.S. 248, 254 (2020).

After the Supreme Court affirmed this Court's decision, the
district court and the remaining parties all treated the Department as
having been dismissed from the case.  For example, the district court
ordered only Allen and Friends of QAR—not the Department—to file a
joint status report.  JA 18, JA 63.  Consistent with that order, the
parties neither requested nor provided the Department's position on the
claims left in the litigation.  Indeed, Allen himself acknowledged in the
July 2020 status report that his claims against Friends of QAR were the
"only live issue in the case."  JA 54.  Allen also informed the district
court that the two remaining parties—Allen and Friends of QAR—had
settled.  JA 54.

In August 2020, Allen voluntarily dismissed with prejudice his
claims against Friends of QAR, which stipulated to dismissal.  JA 56;

11

Fed. R. Civ. P. 41(a)(1)(A)(ii). At that time, no other claims remained. The case had concluded.

Several weeks after this voluntary dismissal, however, Allen moved to reopen the litigation against the Department. In September 2020, he filed a motion for reconsideration under Rule 60(b)(6). JA 58-59. Allen asked the district court to reconsider its 2017 order dismissing the takings claim in Count III of his first amended complaint. JA 58. The district court had dismissed that claim in light of this Court's precedent holding that "the Eleventh Amendment bars Fifth Amendment taking claims against States in federal court when the State's courts remain open to adjudicate such claims." *Allen*, 244 F. Supp. 3d at 540 (quoting *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014)). Allen argued that an intervening Supreme Court decision, *Knick v. Township of Scott*, 588 U.S. 180 (2019), had implicitly overruled this Court's precedent and therefore justified Rule 60(b)(6) relief. JA 63.

As part of this motion, Allen also asked the district court to allow him to assert a new claim against the Department under *United States v. Georgia*, 546 U.S. 151 (2006). JA 63. There, the Supreme Court held

12

that Congress may abrogate state sovereign immunity under Section 5 of the Fourteenth Amendment when state conduct violates both a federal statute and the Fourteenth Amendment. *Id.* at 158-59. In *Georgia*, for example, a prisoner sued the State for money damages under Title II of the Americans with Disabilities Act. *Id.* at 154-55. On the facts of that case, the same state conduct that violated Title II also violated the Eighth Amendment, as applied to the States through the Fourteenth Amendment. *Id.* at 157. Thus, the Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159 (emphasis in original).

Here, Allen sought to assert a *Georgia* claim by alleging that the Department's violation of federal copyright law was also a violation of the Fourteenth Amendment. JA 81-82. Allen, however, had never before asserted a claim under *Georgia*. To justify his pleading amendment, Allen pointed to a response that the Department gave during oral argument before the Supreme Court. JA 82. During that argument, the Department acknowledged the theoretical possibility of a

13

*Georgia* claim for state violations of federal copyright law that also violated the Fourteenth Amendment. Transcript of Oral Argument at 39-40, *Allen v. Cooper*, 589 U.S. 248 (2020) (No. 18-877). At the same argument, however, Allen conceded that he had never asserted a *Georgia* claim in this case. *Id.* at 31-32. As a result, the Supreme Court did not cite, much less discuss, *Georgia* in its opinion.

The district court granted Allen's motion for reconsideration. As for the takings claim, the district court held that reconsideration was justified because the Supreme Court's intervening decision in *Knick* had implicitly overruled this Court's precedent on sovereign immunity from takings claims and therefore justified reconsideration. JA 67-77. The court thus held that Allen's takings claim was "no longer dismissed." JA 80.

As for Allen's request to assert a new claim under *Georgia*, the district court purported to grant Allen's "motion for reconsideration" under Rule 54(b). JA 81. The district court stated that it was reconsidering its "previous order of dismissal" from 2017, even though that order did not address *Georgia* because Allen had never before asserted a claim of that kind. JA 81. The district court also stated that

14

it was doing so under Rule 54(b)—not Rule 60(b)(6), the Rule that Allen
had invoked in his motion.  JA 81.  Rule 54(b) provides that a court may
"revise[ ]" a prior order "at any time before the entry of a judgment
adjudicating all the claims and all the parties' rights and liabilities."
Fed. R. Civ. P. 54(b).  The district court stated that it was applying this
rule because its 2017 order dismissed only some of Allen's claims and
the case had not yet reached final judgment.  JA 64, JA 79.

Under Rule 54(b), the district court held that it was "appropriate"
to consider Allen's *Georgia* claim in this posture because this Court and
the Supreme Court purportedly "passed on the *Georgia* issue" earlier in
the litigation.  JA 81.  The court also emphasized that the Department
had acknowledged, as a general matter, "the legal validity of the case-
by-case abrogation under *Georgia*" during oral argument before the
Supreme Court, even though the court recognized that counsel had
never suggested that such "claims were viable in this case."  JA 82.  The
district court then invoked Rule 15(a)(2) and its instruction that
pleading amendments should be "freely given when justice requires."
JA 83.

15

For these reasons, almost six years after Allen filed his original complaint, the district court granted Allen leave to file a second amended complaint to "buttress" his prior allegations in light of *Georgia*.  JA 83.[2]

### D.   The district court strikes or dismisses all of Allen's amended complaint except his claim under *Georgia*.

Allen filed a second amended complaint.  In his new pleading, Allen asserted ten different claims under a variety of statutory and constitutional theories.  JA 112-123.  Allen reasserted the allegations from his prior complaint about the Department's posting a few of his videos on its YouTube channel and including one of his photographs in a newsletter.  JA 106.  He also added new factual allegations about the Department's alleged infringement of his copyrights.  Specifically, he alleged that the Department had made available several of his photographs on its archived websites, that the Department had shown some of his footage at the North Carolina Maritime Museum at Beaufort, and that the Department had sold a documentary—made by a

---

[2]     Defendants appealed the district court's order.  JA 20.  This Court dismissed that appeal as interlocutory.  JA 21; *see* No. 21-2040, Dkt. 27.

third-party company—with some of Allen's footage at the museum gift shop.  JA 101, JA 106-111.

The Department moved to strike under Rule 12(f).  JA 152-153.  It noted that most of the claims in the amended pleading exceeded the scope of the district court's reconsideration order.  JA 152-153.  The district court agreed.  It held that only Allen's takings and *Georgia* claims were properly asserted in the amended pleading.  JA 273-274.  Specifically, Allen asserted takings claims in Counts III and IV of the complaint.  JA 114, JA 116.  The district court treated those counts as a single takings claim arising directly under the Fifth Amendment.  JA 281.  Allen also referenced *Georgia* across multiple different counts of the complaint.  JA 115, JA 117.  The district court understood the *Georgia* claim to "link[ ] inextricably" three separate counts: Count I, for copyright infringement against the Department and Department officials in their official capacities; and Counts III and IV, for Fourteenth Amendment violations based on the alleged copyright infringement and the passage of section 121-25(b).  JA 273-274.  The court struck the remaining counts and did not address them further.  JA 274.

17

The Department and its officials moved to dismiss these remaining claims based on sovereign immunity. JA 261. The district court dismissed Allen's takings claim brought directly under the Fifth Amendment. JA 281-288. Allen had argued that there is no sovereign immunity from takings claims. JA 281. But as the district court recognized, this Court rejected that argument in a case decided after Allen's motion for reconsideration. JA 281; *see Zito v. N.C. Coastal Res. Comm'n*, 8 F.4th 281, 288 (4th Cir. 2021).

The district court then turned to *Georgia*. Under that decision, Congress can validly abrogate state sovereign immunity only when a plaintiff alleges (1) a federal statutory violation committed by a State that is also (2) a violation of the Fourteenth Amendment. *See Georgia*, 546 U.S. at 158-59.

The district court addressed these requirements in turn. First, the district court held that Allen plausibly alleged copyright infringement. JA 289-291. Copyright owners have the "exclusive rights" to "reproduce," "distribute," "perform," "display," or "prepare derivative works based upon" their copyrighted works. 17 U.S.C. § 106. "Anyone who violates [these] exclusive rights" is "an infringer of the

18

copyright," and the copyright owner may "institute an action for any infringement." *Id.* § 501(a)-(b). The district court noted that it was "undisputed that Allen holds valid copyrights in the materials he alleges the [Department] infringed." JA 290. The district court held that Allen had alleged "detailed accounts of his copyrights and the [Department's] alleged infringements of specific copyrights by copying, displaying, distributing, and performing his works without permission online and in a state museum." JA 290.

At this stage, the district court rejected the Department's copyright-focused defenses under the Copyright Act's exceptions for fair and archival use, as well as the first-sale doctrine. JA 290; *see* 17 U.S.C. §§ 107-09. The court held that these were "affirmative defenses" to infringement that were "better suited to summary judgment" and "premature in this posture." JA 291.

Second, the district court held that Allen had also alleged a Fourteenth Amendment violation of his due-process rights.[3] For copyright infringement to violate due process, (1) "an infringement

---

[3]     The court also considered whether Allen had alleged a Fourteenth Amendment violation on a takings theory, but the court rejected that argument. JA 292-297.

must be intentional, or at least reckless"; and (2) a State must "fail[ ] to offer an adequate remedy for an infringement." *Allen*, 589 U.S. at 261-62. "That means within the broader world of state copyright infringement is a smaller one where the Due Process Clause comes into play." *Id.* at 262.

The district court held that Allen's allegations fell into this "smaller" world of state copyright infringement that violates the Due Process Clause. To begin, the court held that Allen plausibly alleged recklessness. JA 291, JA 298. The district court reasoned that the Department was "clearly on notice of Allen's copyrights given his proactive approach to policing potential infringements, his assertion of his exclusive rights after the fact, and his watermarks and other identifiers on works." JA 291. The district court also concluded that the Department's "patter[n] and timing" of infringement supported an inference of recklessness. JA 291. The district court relied on the same allegations of infringement that Allen had made in his original complaint—the display of several videos on the Department's YouTube channel and the use of one photograph in a newsletter. JA 291; *compare* JA 41-42, *with* JA 106 (first six entries).

20

The district court then turned to the adequate-state-remedy issue. The court did not address whether Allen could seek a post-deprivation remedy—like a breach-of-contract action—in the state courts. Instead, the district court held that *any* post-deprivation remedy would be constitutionally inadequate. Specifically, the district court stated that "post-deprivation remedies are constitutionally inadequate where it is foreseeable that individuals would be deprived of property because of state actors acting pursuant to established state procedure." JA 300. According to the district court, the established state procedure here was section 121-25(b). The district court stated that the statute's "purpose was to deprive Allen of his protected interest in his copyrights" and to allow the Department "to use copyrighted documentary materials in its custody without limitation." JA 301. Under these circumstances, the court held that only a pre-deprivation hearing could satisfy due process. JA 301.

The district court acknowledged that the state conduct that violated the Copyright Act—the Department's allegedly infringing use of Allen's images—was not the same as the state conduct that the district court believed to violate the Due Process Clause—the

21

Department's failure to provide a pre-deprivation hearing in light of section 121-25(b).  JA 302.  The district court held that it would be an unduly "narrow[ ]" view of *Georgia* to require an exact match between the statutory and constitutional violations.  JA 302-303.  The district court acknowledged that its decision departed from a decision of the Eleventh Circuit, *National Association of Boards of Pharmacy v. Board of Regents*, 633 F.3d 1297 (11th Cir. 2011), and decisions of multiple federal district courts.  JA 302.  The court separately reiterated its view that the Supreme Court's sovereign immunity precedents are "amiss" and that case law recognizing the existence of state sovereign immunity beyond the text of the Eleventh Amendment is "poorly reasoned and wrongly decided."  JA 278-279.

This appeal followed.  JA 316-317.

## SUMMARY OF ARGUMENT

For two reasons, this Court should reverse the district court below.

First, the district court erred in reopening this case and allowing Allen to file another amended pleading—despite this Court having remanded with instructions to dismiss Allen's claims and the Supreme

22

Court having affirmed this Court's judgment. To start, the district court applied the wrong legal standard. The court purported to reopen the case under Rule 54(b), but that rule only applies *before* a case reaches final judgment. Here, by contrast, when the district court reopened the litigation, the case was over—Allen's claims against the Department and its officials had been dismissed, and Allen had voluntarily dismissed his claims against the remaining party. Thus, the only way to revive the case was Rule 60(b). But the court did not consider any of the factors required to reopen a final judgment under that rule. Nor did the district court consider any of the additional factors required to decide whether to grant Allen leave to amend under Rule 15(a). By applying the wrong legal standard and failing to consider any of the relevant factors, the district court abused its discretion.

Even if the district court had applied the right legal framework, moreover, it still had no discretion to reopen the case and grant Allen leave to amend. Allen had multiple opportunities after he originally filed his lawsuit in 2015 to assert a claim under *Georgia*—a longstanding precedent from the Supreme Court that has been the law

of the land since 2006. But Allen never asserted a claim of that kind. Because extraordinary circumstances did not justify reopening the case, and because Allen's delay prejudiced defendants, the district court lacked discretion under Rule 60(b) and Rule 15(a) to permit an amended pleading here.

Second, the district court was also wrong on the merits. Allen did not plausibly allege copyright infringement that violated the Due Process Clause. He did not—and cannot—plausibly allege reckless infringement, because this Court's prior opinion already foreclosed that theory. And North Carolina state courts were open to give Allen an adequate remedy. Indeed, Allen's business partner Intersal—in a separate litigation over the 2013 settlement agreement—recently recovered against the Department in state court on a breach-of-contract claim after a jury trial. Post-deprivation remedies of that kind were sufficient to satisfy due process here.

Moreover, Allen's *Georgia* claim fails for an additional reason as well. By its express terms, that case holds that the "*same conduct*" by a State that violates a federal statute must also violate the Fourteenth Amendment. *Georgia*, 546 U.S. at 157 (emphasis added). Every circuit

24

to consider *Georgia*—both in and outside of the copyright context—has recognized this matching requirement.  Yet the district court below declined to do so.  The district court acknowledged that the State's alleged copyright infringement was not the same as the alleged due-process violation: the State's failure to provide Allen with a pre-deprivation hearing.  Given that misalignment, *Georgia* does not allow abrogation here.  The district court's decision to the contrary permits an end-run around the ordinary congruence-and-proportionality requirements for Section 5 legislation—requirements that the Copyright Act does not satisfy.  *Allen*, 589 U.S. at 266.

For these reasons, this Court should reverse and remand with instructions to dismiss and close the case.

## ARGUMENT

### Standard of Review

This Court reviews a district court's rulings on motions under Rule 54(b) and Rule 60(b)(6) for an abuse of discretion.  *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017); *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (en banc).  This Court also reviews for an abuse of discretion a district court's order granting leave to amend

25

under Rule 15. *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022).

This Court reviews the denial of a motion to dismiss based on sovereign immunity de novo. *Wright v. North Carolina*, 787 F.3d 256, 261 (4th Cir. 2015).

## Discussion

## I. The District Court Erred in Reopening the Case to Allow Allen to Amend His Complaint.

District courts have wide discretion to allow parties to amend their pleadings. But the district court below abused that discretion. To start, the district court applied the wrong framework to evaluate Allen's request to assert a *Georgia* claim. And even under the proper standard, the district court had no discretion to allow Allen to bring a new claim—after this case had reached final judgment—that Allen could have raised when he originally filed this lawsuit ten years ago.

### A. The only way for Allen to assert a *Georgia* claim was under Rule 60(b) and Rule 15(a)—rules that the district court did not properly consider.

At the outset, the district court abused its discretion when it failed to apply the correct legal standards to decide Allen's motion to assert a claim under *Georgia*.

26

Below, Allen sought to bring a *Georgia* claim by filing a motion for reconsideration under Rule 60(b)(6). JA 58. The district court, however, construed that motion as arising under Rule 54(b) instead. JA 63-65, JA 81. The district court was wrong to do so.

Rule 54(b) does not apply here. That rule allows a district court to "revise[ ]" a prior order "at any time *before* the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b) (emphasis added). When Allen moved for reconsideration, however, this case was over—all of his claims against all of the defendants had been dismissed. Following this Court's mandate in 2018, the district court dismissed Allen's claims against the Department and its officials. JA 53. And in 2020, after the Supreme Court affirmed this Court's decision in the prior appeal, Allen voluntarily dismissed with prejudice his remaining claims against Friends of QAR. JA 56-57. Thus, in 2021, when the district court purported to "revise" its prior order from 2017 on the original motion to dismiss, the time for the district court to do so under Rule 54(b) had already expired.

27

The district court appeared to reason that Rule 54(b) applied because its 2017 order—the order that Allen had asked the court to reconsider—dismissed only some of Allen's claims against some defendants. JA 64. That was true in 2017. But when the district court ruled in 2021, no claims were left in the case. The district court pointed out that it had never entered an order explicitly styled as a "final judgment." JA 79. But its order implementing this Court's mandate dismissed the claims against the Department and its officials. JA 53. And Allen's voluntary dismissal with prejudice of his remaining claims against Friends of QAR under Rule 41(a)(1)(A)(ii) was "immediately self-executing." *State Nat'l Ins. Co. v. Cnty. of Camden*, 824 F.3d 399, 407 (3d Cir. 2016). "No separate entry or order [was] required to effectuate the dismissal." *Id.*; *see id.* at 407 n.18 (collecting numerous out-of-circuit cases adopting this view); *cf. Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 752 n.1 (4th Cir. 2003) (suggesting that a stipulated dismissal under Rule 41 need not be "effected by court order"). As the Supreme Court has recently confirmed, even a voluntary dismissal *without* prejudice under Rule 41(a) is "final" for

28

purposes of Rule 60(b). *Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 693 (2025).

Because no claims were left, the case was over. The only option for reopening was Rule 60(b), as Allen correctly acknowledged by filing a Rule 60(b)(6) motion. JA 58. Rule 60(b) allows a court to "relieve a party" from a "final judgment, order, or proceeding" for five enumerated reasons, like a "mistake," "newly discovered evidence," or "fraud." Fed. R. Civ. P. 60(b)(1)-(5). It also has a catchall provision—the provision that Allen invoked here—allowing a court to reconsider a final judgment for "any other reason that justifies relief." *Id.* R. 60(b)(6).

A party seeking reconsideration under Rule 60(b)(6) carries a heavier burden than a party seeking reconsideration under Rule 54(b). The Civil Rules "favor the finality of judgments," *Aikens*, 652 F.3d at 501, as "significant time and resources are often invested in arriving at a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). These interests in "finality and judicial economy" require post-judgment motions under Rule 60(b) to meet "strict standards." *Id.* at 514-15. When, as here, a party moves under Rule 60(b)(6), the party "must first show (1) that the motion is timely,

29

(2) that he has a meritorious claim or defense, and (3) that the opposing party will not suffer unfair prejudice if the judgment is set aside." *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018). The party must then show "extraordinary circumstances." *Kemp v. United States*, 596 U.S. 528, 533 (2022).

A party must clear this threshold to reopen the case before a district court may rule on any post-judgment motions. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc). As a result, "when [a] motion to vacate is filed under Rule 60(b), the more restrictive standard for granting that motion must be satisfied *before* consideration can be given to" granting leave to amend under Rule 15(a). *Daulatzai v. Maryland*, 97 F.4th 166, 179 (4th Cir. 2024) (emphasis added).[4]

Here, in evaluating whether to reopen the case for Allen's *Georgia* claim, the district court skipped the Rule 60(b)(6) analysis. It did not

---

[4]     The Supreme Court granted review this Term to decide whether the Rule 60(b)(6) standard must first be satisfied before a court can consider granting leave to file a post-judgment amended complaint under Rule 15(a). *See* Pet. for Cert. i, *BLOM Bank SAL v. Honickman*, No. 23-1259 (U.S. May 29, 2024). The Court heard oral argument on March 3, 2025, but, as of the time of this filing, the Court has not yet issued a decision.

consider whether Allen met any of the requirements under that rule before it granted Allen leave to amend.  JA 80-83.

The district court then compounded the error by not even applying the correct standard for granting leave to amend under Rule 15. Rather, the court merely stated that Rule 15(a)(2) permits a pleading amendment when "justice requires."  JA 83.  The court reasoned that it would be "appropriate" to allow Allen to pursue a claim under *Georgia* because this Court and the Supreme Court had "passed on" that issue and because the Department had acknowledged the theoretical viability of a *Georgia* claim before the Supreme Court.  JA 81-82.  But as this Court has recognized, "there are, of course, circumstances that justify denying a plaintiff the opportunity to try again."  *Nicholson*, 42 F.4th at 197.  Before allowing a pleading amendment, a district court must consider "three . . . justifications for denying leave to amend: prejudice to the opposing party, bad faith, or where the amendment would be futile."  *Id.*; *see also Laber*, 438 F.3d at 426.  Yet the district court did not expressly consider any of these factors in deciding whether to grant Allen leave to assert a *Georgia* claim.

31

When, as here, a district court "completely fail[s] to consider the right factors," it abuses its direction. *Nicholson,* 42 F.4th at 197. The district court did so below when it completely failed to consider the applicable Rule 60(b) and Rule 15(a) factors in allowing Allen to reopen the case and assert a *Georgia* claim.[5]

* * *

Because Allen had never before asserted a *Georgia* claim, and because he sought to add this new claim only after all of his original claims had been dismissed, Rule 60(b) and Rule 15(a) were the only procedural path that could have justified the district court's order. *Daulatzai*, 97 F.4th at 179. The district court did not follow that path. To the contrary, the district court resolved Allen's motion under inapplicable legal standards and thus abused its discretion.

When a district court fails to apply the right legal test, this Court may remand for consideration under the proper standard. *Scott v.*

---

[5]    Other unusual aspects of the district court's order only serve to underscore its failure to apply the proper legal framework. Although the district court briefly discussed Rule 15(a), most of its analysis concerned whether it could "reconsider" its 2017 order so that Allen could bring a claim under *Georgia.* JA 81. But Allen's complaint did not allege a *Georgia* claim. JA 29-52. Thus, there was nothing about *Georgia* in the district court's 2017 order for it to reconsider.

32

*Cricket Commc'ns, LLC*, 865 F.3d 189, 197 (4th Cir. 2017). But "when a trial court applies the wrong legal test or quantum of proof, an appellate court may resolve the case without remanding if the evidence would inevitably produce the same outcome under the correct standard." *Humphrey v. Humphrey*, 434 F.3d 243, 248 (4th Cir. 2006). That situation applies here. As shown below, on the facts of this decade-old case, there are no circumstances under which the district court could have permitted Allen to reopen this case and amend his complaint without abusing its discretion.

### B. Under the correct legal standard, there was no basis for reopening the case and granting leave to amend.

Even if the district court had applied the right legal framework, it still had no discretion on these facts to reopen the case and grant leave to amend.

To start, Allen cannot meet the requirement under Rule 60(b)(6) that he show "extraordinary circumstances" that justify reopening. *Kemp*, 596 U.S. at 533. Below, Allen suggested that extraordinary circumstances were present because the Department purportedly conceded at oral argument in the Supreme Court that he could pursue a claim under *Georgia*. No. 15-cv-627, Dkt. 106 at 12. But the

Department made no such concession.  It merely acknowledged that,

under longstanding Supreme Court precedent, state sovereign

immunity from copyright claims may theoretically be abrogated under

*Georgia* if a State's infringing conduct also violates the Fourteenth

Amendment.  Transcript of Oral Argument at 39-40, *Allen v. Cooper*,

589 U.S. 248 (2020) (No. 18-877).  As the district court below correctly

recognized, this statement was not a concession that *Allen himself* could

bring such a claim *in this case*.  JA 82.  Indeed, the Department pointed

out—and Allen conceded—that no *Georgia* claim had ever been asserted

in this case.  Transcript of Oral Argument at 31-32, 40, *Allen*, 589 U.S.

248.

　　Although the district court did not frame its discussion of this

point in Rule 60(b)(6) terms, the court appeared to suggest that a

change in law justified reopening the case.  JA 81.  The court reasoned

that it had "never expressly closed the door" on a *Georgia* claim and

that this Court and the Supreme Court had "passed on" the *Georgia*

issue.  JA 81.  That is simply incorrect.  In the prior appeal, neither this

Court nor the Supreme Court analyzed *Georgia*.  The Supreme Court

decided *Georgia* in 2006—roughly a decade before Allen filed this

lawsuit.  And the Supreme Court's decision in this case left *Georgia* unaddressed.  *Georgia* thus did not represent an intervening change in the law.  But even if it had, that would still not be enough to constitute extraordinary circumstances under Rule 60(b)(6).  This Court has held that "a change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6)."  *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993).  That principle squarely applies here to foreclose Allen's Rule 60(b)(6) motion.

Allen's request to newly assert a *Georgia* claim also fails for undue delay and prejudice—interrelated considerations that are relevant under both Rule 60(b) and Rule 15(a).  As this Court has explained, "delay may not be enough by itself to deny leave to amend, but prejudice will naturally be much easier to show . . . the more time has passed between a first attempt and a proposed amendment."  *Nicholson*, 42 F.4th at 198.

The prejudice from Allen's delay here is manifest.  Allen could have brought a *Georgia* claim when he sued ten years ago.  Although Allen alleged at that time that the Copyright Act validly abrogated state sovereign immunity, he was free to further allege that state

35

sovereign immunity was abrogated under *Georgia*. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). The Civil Rules do not "afford plaintiffs a tool to engage in the litigation of cases one theory at a time." *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 506 (4th Cir. 1992). Yet by seeking to amend his complaint after this case reached final judgment, under a theory that he could have raised ten years ago, Allen is doing just that.

In addition to failing to plead a *Georgia* claim when he sued in 2015, Allen did not seek to raise the *Georgia* issue when this case was on appeal. Allen, for example, did not cite or discuss *Georgia* in his briefs to this Court. No. 17-1522, Dkt. 59, 76. And a party may not use Rule 60(b)(6) as a substitute for arguments that it could have raised on appeal. *Aikens*, 652 F.3d at 501 ("[I]f the reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal."). Nor did Allen seek from the Supreme Court a remand to the lower courts to consider the possible abrogation of state sovereign immunity on an as-applied basis—the relief that the Supreme

36

Court granted in *Georgia* itself. 546 U.S. at 159-60. And again, the Supreme Court here neither cited nor discussed *Georgia* in its opinion affirming this Court's decision ordering Allen's claims to be dismissed.

All told, Allen had numerous opportunities to assert a claim under *Georgia* before his original claims were dismissed. He did not. Allowing Allen to bring that claim for the first time after final judgment would prejudice defendants by undermining the finality of judgments and forcing them to litigate "one theory at a time," contrary to the Civil Rules. *Omni*, 974 F.2d at 506.[6]

* * *

"There must be an end to litigation someday." *Ackermann v. United States*, 340 U.S. 193, 198 (1950). "[W]here litigants have once battled for the court's decision, they should neither be required, nor

---

[6] Even if this Court were to hold that the district court properly analyzed Allen's request to assert a *Georgia* claim under Rule 54(b), Allen still could not meet that more forgiving standard. "[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson*, 856 F.3d at 325 (citations omitted). Here, Allen pointed to no new evidence. There was no change in applicable law. And there was no other error causing a manifest injustice.

37

without good reason permitted, to battle for it again." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (citations omitted). Here, this case was litigated all the way to the Supreme Court, which affirmed dismissal of all of Allen's claims against the Department. And on remand, Allen voluntarily dismissed his remaining claims against a third party. Because the district court below abused its discretion by reopening this case and permitting a pleading amendment after the case was already over, this Court should reverse and remand with instructions to dismiss and close the case.

## II. The District Court Erred in Holding That Allen Alleged a Copyright Claim Abrogating State Sovereign Immunity under *Georgia*.

In the alternative, this Court should reverse on the merits. Allen did not plausibly allege copyright infringement that violated the Due Process Clause. And even if he had, the district court's novel abrogation theory is inconsistent with *Georgia*.

### A. Allen failed to plausibly allege copyright infringement that violated the Due Process Clause.

Allen did not allege copyright infringement that also ran afoul of the Fourteenth Amendment's Due Process Clause, as required to abrogate state sovereign immunity under *Georgia*.

38

The Fourteenth Amendment prohibits a State from "depriv[ing]" a person of "property" "without due process of law." U.S. Const. amend. XIV, § 1. Copyrights are a form of property. *Allen*, 589 U.S. at 261. But a State "deprives" a person of property under the Due Process Clause only when it acts at least recklessly. *Id.* And a State affords "due process" when it provides an adequate remedy for the alleged property deprivation. *Id.* at 262. Thus, state copyright infringement violates due process only when (1) "an infringement [is] intentional, or at least reckless"; and (2) a State "fails to offer an adequate remedy for an infringement." *Id.* at 261-62. Allen did not plausibly allege either element here.

### 1. Allen failed to plausibly allege recklessness.

Allen's allegations do not—and cannot—establish recklessness. A defendant acts recklessly by consciously disregarding "a substantial and unjustified risk of wrongdoing." *BM Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 308 (4th Cir. 2018) (alterations and quotation marks omitted); *see id.* at 312-13. In the copyright context, that means a defendant who "recklessly disregards a copyright holder's rights." *See Lyons P'Ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789,

799 (4th Cir. 2001). By contrast, a defendant who "believes in good faith that his conduct is innocent" does not act recklessly. *See id.* at 800.

This Court's prior decision in this case forecloses an inference of recklessness here. Allen's second amended complaint reasserted many of the same alleged facts that were before this Court when it decided this case in 2018. Those allegations were that the Department displayed several of Allen's videos on the Department's YouTube channel and used one of his photographs in a newsletter. *Compare* JA 41-42, *with* JA 106 (first six entries); *see Allen*, 895 F.3d at 345.

This Court considered these allegations and held that state officials were entitled to qualified immunity for any infringement. The Court explained that, based on the 2013 settlement agreement and state public records law, it was "far from clear whether the Department was prohibited from displaying Allen's copyrighted materials in the manner alleged in the complaint." *Allen*, 895 F.3d at 357. "This is especially so," the Court reasoned, "in view of the Department's role in the salvage project to preserve for the public the site and artifacts and to document their salvage in furtherance of research and the education

40

of the public." *Id.* The Court thus concluded "that reasonable officials in the position of the North Carolina officials would not have understood *beyond debate* that their publication of the material violated Allen's rights under the Copyright Act." *Id.* (emphasis in original).

This Court's holding that state officials were entitled to qualified immunity for the alleged infringement cannot be squared with the conclusion that Allen established recklessness in his new complaint, based on the same facts. As this Court has explained, "a government official necessarily forfeits any entitlement to qualified immunity" "by acting intentionally or recklessly." *United States ex rel. Citynet, LLC v. Gianato*, 962 F.3d 154, 159 (4th Cir. 2020) (emphasis omitted). Thus, if state officials had acted recklessly here, qualified immunity would have been unavailable. But this Court reached the opposite conclusion.

The district court below took a different view. JA 291. The court reasoned that Allen had plausibly alleged recklessness because he claimed that state officials took down the allegedly infringing images after the settlement agreement in 2013, only to repost them after the State passed section 121-25 in 2015. JA 291. But those were the *same* allegations that were before this Court the last time. *See Allen*, 895

41

F.3d at 345. And after considering those same allegations, this Court concluded that it was at least debatable whether state officials would have reasonably understood that "their publication of the material violated Allen's rights under the Copyright Act." *Id.* at 357. Thus, the law-of-the-case doctrine precluded the district court from reaching a different conclusion below. *See United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999).

To be sure, Allen's amended pleading added some new factual allegations that were not previously before this Court. But those new facts do not establish recklessness either.

First, Allen alleged that several of his photographs were available on the Department's archived websites and that the Department had shown some of his footage at the North Carolina Maritime Museum. JA 106-111. But the nature of these allegations is no different than Allen's prior allegations. As before, in light of the 2013 settlement agreement and state public records law, *see supra* pp 6-7, state officials would not have reasonably understood that displaying Allen's works in this fashion would violate federal copyright law. *See Allen*, 895 F.3d at 357. And as before, that conclusion is especially true given the Department's

42

role "in furtherance of research and the education of the public" about the shipwreck. *See id.*; *cf.* 17 U.S.C. § 107 (permitting "fair use" of copyrighted works for "teaching," "scholarship," or "research").

Second, Allen claims that the Department sold a documentary with some of his footage at the Maritime Museum gift shop. JA 101. But he acknowledges that a third-party company—not the Department—made the documentary that was being sold. JA 101. Given this undisputed fact, and given that Allen alleged no other facts supporting an inference that anyone at the Department had reason to know that the documentary might contain some of Allen's images, Allen has not plausibly alleged recklessness. *See Lyons*, 243 F.3d at 799-800.

## 2. Allen had adequate state remedies.

North Carolina state courts were also open to offer Allen an adequate remedy for any infringement. The Due Process Clause ordinarily "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis omitted). But in certain circumstances, "a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128.

43

In the closely related context of patent infringement, the Supreme Court has held that the availability of post-deprivation remedies in state court satisfies due process. In *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627 (1999), the Court addressed whether Congress had validly abrogated state sovereign immunity from patent-infringement claims under Section 5 of the Fourteenth Amendment. *Id.* at 630. In analyzing the congressional record, the Court noted that Congress had "barely considered the availability of state remedies for patent infringement and hence whether the States' conduct might have amounted to a constitutional violation under the Fourteenth Amendment." *Id.* at 643. The Court noted that the limited testimony on this issue did not concern whether "state remedies were constitutionally inadequate," but instead whether "they were less convenient than federal remedies." *Id.* at 644. The Court specifically pointed to the State of Florida—the defendant in the case—and observed that it provided alternative remedies for patent infringement, including "through a takings or conversion claim" in state court. *Id.* at 644 n.9. Thus, as the Supreme Court would later confirm in *Georgia*, its *Florida Prepaid* decision stands for the proposition that

44

"Florida satisfied due process by providing remedies for patent
infringement by state actors."  546 U.S. at 158.

*Florida Prepaid* is "the critical precedent" here.  *Allen*, 589 U.S. at
262.  After all, "[t]hat decision defined the scope of unconstitutional
infringement . . . as intentional conduct for which there is no adequate
state remedy" in a closely related field of intellectual property.  *Id.*

If Florida's post-deprivation remedies for patent infringement
were constitutionally adequate in *Florida Prepaid*, North Carolina's
post-deprivation remedies for copyright infringement are necessarily
adequate here as well.  For example, the State has waived sovereign
immunity in state court for breach-of-contract claims.  *Smith v. State*,
222 S.E.2d. 412, 423-24 (N.C. 1976).  In fact, Intersal—in a separate
litigation over the 2013 settlement agreement—has recently recovered
against the Department in state court on a breach-of-contract claim
after a jury trial.  *Intersal, Inc. v. Wilson*, Final Order & Judgment, No.
2015-cvs-9995, Dkt. 400 (N.C. Bus. Ct. Dec. 13, 2024).  The State has
also waived sovereign immunity in state court from takings claims.
*Midgett v. N.C. Highway Comm'n*, 132 S.E.2d 599, 608 (N.C. 1963),
*rev'd on other grounds*, *Lea Co. v. N.C. Bd. of Transp.*, 304 S.E.2d 164

45

(N.C. 1983). And the North Carolina Tort Claims Act empowers the North Carolina Industrial Commission to award compensatory damages when it "finds that there was negligence" by a state employee "while acting within the scope of his office, employment, service, agency or authority that was the proximate cause of the injury[.]" N.C. Gen. Stat. § 143-291(a). Finally, a plaintiff may bring a "direct claim against the State" for violations of the North Carolina Constitution—notwithstanding any sovereign immunity bar that might otherwise apply—if the plaintiff's rights cannot be fully redressed through statutory or other state causes of action. *Corum v. Univ. of N.C.*, 413 S.E.2d 276, 289 (N.C. 1992). Under *Florida Prepaid*, remedies of this kind are constitutionally adequate.

The district court below, however, held that a post-deprivation remedy was not enough to satisfy due process. It cited a line of Supreme Court precedent holding that post-deprivation remedies are sufficient "where a loss of property is occasioned by a random, unauthorized act by a state employee," but not where the property loss results from "an established state procedure." *Hudson v. Palmer*, 468 U.S. 517, 532 (1984). The district court appeared to believe that the

46

"established state procedure" here was section 121-25. JA 301. Because the district court believed that the law's purpose "was to deprive Allen of his protected copyrights," the court reasoned that the Department committed copyright infringement pursuant to this statute. JA 301. And on this basis, the court concluded that a pre-deprivation hearing was required to satisfy due process. JA 301.

The district court was wrong to hold that section 121-25(b) was the kind of "established state procedure" that requires a pre-deprivation hearing under the Due Process Clause. An "established state procedure" has as its purpose the deprivation of property. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *accord McClary v. O'Hare*, 786 F.2d 83, 87 (2d Cir. 1986); *Rittenhouse v. DeKalb Cnty.*, 764 F.2d 1451, 1455 (11th Cir. 1985) (en banc). "[I]t is the state system itself that destroys a complainant's property interest . . . without according him proper procedural safeguards." *Logan*, 455 U.S. at 436. Thus, "[t]he real issue is whether it is foreseeable that individuals—individuals *generally*, as opposed to [the plaintiff] specifically—would be deprived of property interests when the state actors act pursuant to the

47

established state procedure." *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents*, 633 F.3d 1297, 1318 (11th Cir. 2011) (emphasis added).

Here, section 121-25(b) merely clarified the State's longstanding public records law. *See supra* pp 7-8. When section 121-25(b) was enacted, the public records law already stated—as it still does today— that "all . . . photographs [and] films . . . made or received pursuant to law . . . in connection with the transaction of public business by any agency of North Carolina" are "public records," and that it is "the policy of [the] State that the people may obtain copies of . . . public records . . . free or at minimal cost unless otherwise specifically provided by law." N.C. Gen. Stat. § 132-1(a), (b). That law does not seek "to deprive anyone of anything, and the procedures cannot be said to contemplate the deprivation of any protected interest." *See Rittenhouse*, 764 F.2d at 1455 (emphasis omitted). Section 121-25(b)—as a clarifying amendment to the state public records law—was therefore not the type of "established state procedure" that required a pre-deprivation hearing to satisfy due process. *Logan*, 455 U.S. at 436.

In any event, the district court was wrong to suggest that state public records law deprived Allen of a remedy for his copyright-

48

infringement claims. As discussed above, Intersal brought successful state-law claims and recovered against the Department in state court over an intellectual-property dispute arising from the 2013 settlement agreement. *See supra* p 45. The state legislature also amended section 121-25(b) in 2016 to remove its statement that "[t]here shall be no limitation on the use" of shipwreck images, and the legislature repealed the law entirely in 2023. *See supra* n.1.

In sum, Allen failed to allege either recklessness or lack of an adequate remedy and therefore did not state a due-process claim.

## B.     Even if Allen had adequately alleged a due-process violation, abrogation under *Georgia* was unavailable on these facts.

Allen's *Georgia* claim fails for an independent reason as well. Allen sued the Department for direct copyright infringement. Yet the due-process violation that he alleges—the lack of a pre-deprivation hearing—does not align with the federal statutory violation. As courts across the country have uniformly held, that mismatch forecloses as-applied abrogation under *Georgia*.

Section 5 of the Fourteenth Amendment gives Congress the power to abrogate state sovereign immunity. Under that provision, Congress

may "enforce" the Fourteenth Amendment's substantive provisions by
enacting "appropriate" legislation.  U.S. Const. amend. XIV, § 5.  But
because this power is limited to enforcing the Constitution, "Section 5
legislation . . . must be an appropriate remedy for identified
constitutional violations, not an attempt to substantively redefine the
States' legal obligations."  *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S.
721, 728 (2003) (citations omitted).[7]

The Supreme Court's decision in *Georgia* confirms two ways that
Congress may abrogate state sovereign immunity under its Section 5
powers.  First, Congress may pass "prophylactic" legislation to deter
Fourteenth Amendment violations.  *Georgia*, 546 U.S. at 158.  For
Congress to validly abrogate state sovereign immunity in this way,
"[t]here must be a congruence and proportionality between the injury to
be prevented or remedied and the means adopted to that end."  *City of
Boerne v. Flores*, 521 U.S. 507, 520 (1997).  Specifically, Congress must
identify conduct by States that violates the Constitution and then

---

[7]     Congress must also "unequivocally express[ ] its intent to
abrogate" state sovereign immunity.  *Kimel v. Fla. Bd. of Regents*, 528
U.S. 62, 73 (2000).  There is no dispute here that the Copyright Act
expresses an unequivocal intent to abrogate state sovereign immunity.
17 U.S.C. § 511.

choose a remedy that is congruent and proportional to the scope of that problem. *Id.* If it does, Congress may "allow suits against States for a somewhat broader swath of conduct" than the constitutional violations, "including acts constitutional in themselves." *Allen*, 589 U.S. at 260 (citations omitted); *see also Boerne*, 521 U.S. at 518 (permitting legislation that "deters or remedies constitutional violations," "even if in the process it prohibits conduct which is not itself unconstitutional").

Second, Congress may "create a cause of action through which the citizen may vindicate his Fourteenth Amendment rights" "by authorizing private suits for damages against the States." *Georgia*, 546 U.S. at 158-59 (quotation marks omitted). This so-called "as-applied" method of abrogation allows Congress to "creat[e] private remedies against the States," but only "for *actual* violations of" the Fourteenth Amendment. *Id.* at 158 (emphasis in original).

The facts of *Georgia* illustrate how Congress may abrogate state sovereign immunity as applied to an individual plaintiff. In *Georgia*, a disabled inmate in state prison sued the State for money damages under Title II of the Americans with Disabilities Act. *Id.* at 153. Title II, in turn, purported to abrogate state sovereign immunity. *Id.* But

51

the Court held that it need not reach the broader question whether Title II was valid prophylactic legislation under Section 5. *Id.* at 158; *see also id.* at 163 (Stevens, J., concurring). That was so because it was undisputed that the prisoner "had alleged actual violations of the Eighth Amendment," as applied to the States through the Fourteenth Amendment, and that "this same conduct that violated the Eighth Amendment also violated Title II of the ADA." *Id.* at 157. On this legal theory, the Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159 (emphasis in original). The Court held that the lower courts had thus erred in dismissing "those of [the prisoner's] Title II claims that were based on such unconstitutional conduct." *Id.*

As-applied abrogation under *Georgia* thus requires that the alleged federal statutory violation match the alleged Fourteenth Amendment violation. As the Court emphasized, as-applied abrogation of state sovereign immunity is appropriate only in cases where the "*same conduct*" that violates a statute also violates the Fourteenth Amendment. *Id.* at 157 (emphasis added). For that reason, the Court

52

explained that the plaintiff in *Georgia* could pursue damages claims only to the extent that his statutory claims were "based on" conduct that "actually violates the Fourteenth Amendment." *Id.* at 159.

At least one circuit has applied this matching rule for *Georgia* claims in the copyright context. In *National Association of Boards of Pharmacy v. Board of Regents*, 633 F.3d 1297 (11th Cir. 2011), the Eleventh Circuit addressed a copyright-infringement lawsuit against a state university for a professor's infringement. *Id.* at 1301-02. The court held that the lawsuit was barred by sovereign immunity because the plaintiff had not alleged an actual due-process violation. *Id.* at 1319. The court also observed, however, that even if the plaintiff had alleged a due-process violation, it was "unclear" whether the plaintiff's "procedural due process claim actually falls under *Georgia*'s framework." *Id.* at 1316 n.32. The reason was that "the action necessary to infringe a copyright is arguably distinct from the conduct constituting [the plaintiff's] procedural due process claim." *Id.* Specifically, the due-process violation was based on the plaintiff's claim that it "should have received a pre-deprivation hearing before its copyright was infringed." *Id.* "This alleged conduct—failing to provide

53

a hearing—is not identical to copyright infringement." *Id.* The court

thus reasoned that the plaintiff's "argument that it was owed a pre-

deprivation hearing is not implicated by a strict understanding of what

it is to infringe a copyright and thus arguably not covered by *Georgia*."

*Id.*[8]

Following this decision, several federal district courts have

squarely held that, contrary to the district court decision below, a

plaintiff cannot allege a copyright claim that abrogates state sovereign

immunity under *Georgia* on a theory that the State violated due process

by failing to provide a pre-deprivation hearing. *See Am. Shooting Ctr.,*

*Inc. v. Secfor Int'l*, No. 13-cv-1847, 2016 WL 3952130, at *4 (S.D. Cal.

July 22, 2016); *Campinha-Bacote v. Regents of the Univ. of Mich.*, No.

15-cv-330, 2016 WL 223408, at *5 (S.D. Ohio Jan. 19, 2016). And

---

[8]     To be sure, the court did not discuss "this argument further"
because the plaintiff had failed to allege a due-process violation in the
first place. *Id.* The court's discussion on this point was therefore dicta.
But that dicta is persuasive. As *Georgia* itself repeatedly made clear,
only when the "same conduct" that violates a federal statute also
constitutes an actual Fourteenth Amendment violation can Congress
validly abrogate state sovereign immunity on a case-by-case basis. *See*
546 U.S. at 157-59

54

neither Allen nor the district court has ever identified *any* court that has ever before held to the contrary.  *See* JA 302.

This Court has also previously applied *Georgia*'s matching rule outside the copyright context.  Specifically, in *Fauconier v. Clarke*, 966 F.3d 265 (4th Cir. 2020), this Court required a match between a prisoner's claims under the ADA and the Equal Protection Clause.  In that case, an inmate in Virginia state custody sued over a refusal by state officials to allow him to return to work in the state prison system after his hospitalization.  *Id.* at 270.  This Court held that the same conduct by Virginia state officials that violated the ADA—their decision to deny the inmate a job in prison after his hospitalization—also violated the Equal Protection Clause by treating him differently from other similarly situated inmates without a legitimate justification.  *Id.* at 276-79.  Because the prisoner had "plausibly alleged violations of both Title II of the ADA and the Fourteenth Amendment," this Court held that the State was not entitled to sovereign immunity under *Georgia*.  *Id.* at 280.

Other circuits have likewise required a match.  The Third and Seventh Circuits have done so for claims arising under the ADA.

55

*McDaniel v. Syed*, 115 F.4th 805, 830 (7th Cir. 2024) ("Because the conduct that supports [the plaintiff's] Title II ADA claim would also amount to a violation of the Eighth Amendment, the Eleventh Amendment does not bar him from seeking money damages against the [State].―); *Durham v. Kelley*, 82 F.4th 217, 229 (3rd Cir. 2023) (holding that because a prisoner "allege[d] violations of both Title II and the Eighth Amendment arising from the same conduct," his *Georgia* claim could proceed).

The Ninth Circuit has applied this requirement to other federal statutes as well.  For example, in *Alaska v. EEOC*, 564 F.3d 1062 (9th Cir. 2009), that court considered whether the Government Employee Rights Act—a statute that "amended Title VII to extend coverage of its employment discrimination provisions to [certain] government employees"—abrogated state sovereign immunity under *Georgia*.  *Id.* at 1066.  The court held that the statute abrogated state sovereign immunity as applied to two plaintiffs who had alleged pay-discrimination, harassment, retaliatory-discharge claims.  *Id.* at 1068-71.  The court asked whether "each claim alleges conduct that, if it occurred and wasn't justified by a valid defense, would have violated

56

the Fourteenth Amendment." *Id.* at 1068. Applying that matching requirement, the court held that the same conduct that violated the statute also violated the Equal Protection Clause and the First Amendment. *Id.* at 1068-71. The court thus allowed the claims to proceed despite the State's sovereign immunity. *Id.* at 1071.

Here, the state conduct that Allen alleged as a violation of the Copyright Act—the Department's use of Allen's copyrighted images—is different from the state conduct that Allen alleged as a violation of due process—the State's passage of section 121-25(b) and its failure to provide Allen with a pre-deprivation hearing. That mismatch forecloses a *Georgia* claim here. Allen has not alleged that the "same conduct" that violates a federal statute also violates the Fourteenth Amendment, as *Georgia* requires. 546 U.S. at 157. Thus, even if Allen had plausibly alleged a due-process violation, there would be no abrogation of state sovereign immunity available under the Copyright Act in this case.

The district court acknowledged that Allen's statutory claim did not align with his Fourteenth Amendment claim, describing this argument as the State's "ace in the hole." JA 302. The court saw "[n]othing in *Georgia*" to require a match. JA 302. But as discussed,

57

that is indeed what *Georgia* requires, as the Court's opinion plainly states multiple times. *See, e.g.*, 546 U.S. at 157 (noting that the "same conduct that violated the Eighth Amendment also violated Title II of the ADA"); *see also id.* at 159 (allowing "Title II claims that were based on . . . unconstitutional conduct" to proceed); *id.* (focusing on "to what extent the conduct underlying [the plaintiff's] constitutional claims also violated Title II").

The district court worried that it would be an unduly "narrow[ ]" view of *Georgia* to require a match. JA 302. The court's concern should have run in the other direction. Unless a statutory violation also amounts to a Fourteenth Amendment violation, the only way that Congress may abrogate state sovereign immunity under Section 5 is through valid prophylactic legislation—legislation that must satisfy the requirements of congruence and proportionality. *Boerne*, 521 U.S. at 520. Yet the Supreme Court has already held that the Copyright Act fails to satisfy those requirements. *Allen*, 589 U.S. at 265. Thus, adopting the district court's view would allow an end-run around the ordinary requirements for prophylactic Section 5 legislation.

58

In sum, even if Allen had alleged a Fourteenth Amendment violation, he still cannot bring a *Georgia* claim because he has not alleged that the same state conduct violates both the Copyright Act and his due-process rights.

## CONCLUSION

Defendants respectfully request that this Court reverse the district court and remand with instructions to dismiss and close the case.

Respectfully submitted, this the 26th day of March 2025.

JEFF JACKSON
Attorney General

Ryan Y. Park
Solicitor General

/s/ Nicholas S. Brod
Nicholas S. Brod
Deputy Solicitor General

Kaeli E. Czosek
Solicitor General Fellow

Olga E. Vysotskaya de Brito
Senior Deputy Attorney General

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
(919) 716-6400

*Counsel for Defendants-Appellants*

59

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 11,331 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced typeface: 14-point Century Schoolbook font.

Respectfully submitted, this the 26th day of March 2025.

/s/ Nicholas S. Brod
Nicholas S. Brod

## CERTIFICATE OF SERVICE

I certify that on March 26, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

Respectfully submitted, this the 26th day of March 2025.

/s/ Nicholas S. Brod
Nicholas S. Brod