# NO. 24-1954

In The

# United States Court Of Appeals

## For The Fourth Circuit

**FREDERICK L. ALLEN; NAUTILUS PRODUCTIONS, LLC,**

*Plaintiffs - Appellees,*

v.

**JOSHUA H. STEIN, Governor of North Carolina; SUSAN WEAR KLUTTZ,**
**Former Secretary of the North Carolina Department of Natural and Cultural Resources,**
**in her official capacity; MARGRETTE KATHRYN THOMPSON, Chief Deputy Secretary of the**
**North Carolina Department of Natural and Cultural Resources, in her official capacity; DARIN J. WATERS,**
**Deputy Secretary of the North Carolina Department of Natural and Cultural Resources, in his official capacity;**
**CATHERINE ANN SWAIN, Director of Marketing of the North Carolina Department of Natural and**
**Cultural Resources, in her official capacity; JAMES CHRISTOPHER SOUTHERLY, State Archaeologist,**
**in his official capacity; STEPHEN ATKINSON, Deputy State Archaeologist - Underwater and Director of the**
**Underwater Archaeology Branch of the North Carolina Department of Natural and Cultural Resources,**
**in his official capacity; NORTH CAROLINA DEPARTMENT OF NATURAL AND**
**CULTURAL RESOURCES; STATE OF NORTH CAROLINA; JEFFREY NEALE JACKSON,**
**Attorney General of North Carolina, in his official capacity; PAMELA BREWINGTON CASHWELL,**
**Secretary of the North Carolina Department of Natural and Cultural Resources, in her official capacity;**
**SARAH KOONTS,  in her official capacity; MARIA E. VANN, Director of Regional History Museums of the**
**North Carolina Department of Natural and Cultural Resources, in her official capacity;**
**MIKE CARRAWAY,  in his official capacity; WILLIAM SCHORR JOHNSON, Director of**
**Communications of the North Carolina Department of Natural and Cultural Resources, in his official capacity,**

*Defendants - Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH

_____

**BRIEF OF APPELLEES**

_____

| | | | |
|---|---|---|---|
| **Susan Freya Olive** | **G. Jona Poe, Jr.** | **Adam Adler** | **Elliot Sol Abrams** |
| OLIVE & OLIVE, P.A. | POE LAW FIRM, PLLC | REICHMAN JORGENSEN | CHESHIRE, PARKER, |
| **500 Memorial Street** | **3202 Guess Rd.** | LEHMAN & FELDBERG LLP | SCHNEIDER, PLLC |
| **P. O. Box 2049** | **PO Box 15455** | **100 Marine Parkway** | **P. O. Box 1029** |
| **Durham, NC 27702** | **Durham, NC 27704** | **Suite 300** | **Raleigh, NC 27602** |
| **(919) 683-5514** | **(919) 471-4015** | **Redwood Shores, CA 94065** | **(919) 833-3114** |
| | | **(650) 623-1401** | |

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1954__        Caption: __FREDERICK L. ALLEN et al v. ROY A. COOPER et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__FREDERICK L. ALLEN__
(name of party/amicus)

_____

who is _____APPELLEE_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?   ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)  ☐YES☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?    ☐YES☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Susan Freya Olive          Date: 10/03/2024

Counsel for: Appellees

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1954__        Caption: __FREDERICK L. ALLEN et al v. ROY A. COOPER et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__NAUTILUS PRODUCTIONS, LLC__
(name of party/amicus)


who is _____APPELLEE_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES ☐  ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?               ☐YES☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?               ☐YES☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Susan Freya Olive                    Date:    10/03/2024

Counsel for: Appellees

- 2 -

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENTS

TABLE OF AUTHORITIES ...................................................................iv

INTRODUCTION ...........................................................................1

STATEMENT OF JURISDICTION.......................................................2

STATEMENT OF THE CASE............................................................3

I.     Allen Creates a Treasure Trove of Copyrighted Footage................................3

II.    Defendants—Continuously, Intentionally, and in Bad Faith—Pirate Allen's Valuable Work ................................................................5

III.   This Court Dismisses Allen's Claims "Without Prejudice"...........................8

IV.   State Concedes It Lacks Immunity for Intentional Infringement...................9

V.    District Court Allows Allen to Amend His Complaint to Allege Intentional Infringement Without Adequate State-Law Remedy .................11

       A.    District Court Allows Allen to Amend Complaint ............................11

       B.    State Files Improper Interlocutory Appeal...........................................12

       C.    Allen Files Amended Complaint..........................................................12

VI.   District Court Rejects Defendants' Argument that Second Amended Complaint Must Be Dismissed in its Entirety ...............................12

SUMMARY OF ARGUMENT ...............................................................13

I.     There is Neither Appellate Jurisdiction nor Merit as to Defendants' First Issue...............................................................................13

i

II.     The District Court Correctly Declined to Dismiss the Complaint
        Based on the Defense of Sovereign Immunity ...............................................14

ARGUMENT ....................................................................................................15

I.      Standards of Review ...............................................................................15

        A.      Jurisdiction is the *Sine Qua Non* of any Appeal ..................................15

        B.      Defendants' Procedural Challenges are Reviewed for Abuse of
                Discretion ............................................................................................16

        C.      Issues of Sovereign Immunity and Sufficiency of a Complaint
                Are Reviewed De Novo ......................................................................16

II.     The District Court's Decision Allowing Allen to Amend his
        Complaint Should Not be Reversed ...........................................................16

        A.      This Court Lacks Appellate Jurisdiction Over Defendants' First
                Issue ....................................................................................................17

                1.      Defendants failed to identify the challenged orders in
                        their notice of appeal.................................................................17

                2.      Defendants' notice of appeal was untimely .............................19

                3.      The "final judgment rule" discourages interlocutory
                        appeals and piecemeal appeals.................................................20

                4.      This appeal is interlocutory and subject to dismissal
                        because there is no final judgment, the collateral order
                        doctrine does not apply, and there is no basis for exercise
                        of pendent jurisdiction ............................................................21

        B.      Defendants Waived their First Issue by Failing to Assert It in
                their 2021 Appeal ...............................................................................25

        C.      Defendants' First Issue Also Fails on the Merits ...............................27

III.    Defendants Are Not Entitled to Sovereign Immunity ....................................30

ii

A.    Allen Has Alleged a Violation of the Copyright Act...........................30

B.    Defendants' Infringement Violated Due Process...............................30

    1.    Defendants deprived Allen of his property.............................31

    2.    Defendants have not provided any process, let alone sufficient process......................................................................37

        a.  Allen was entitled to pre-deprivation process ....................37

        b.  Alternatively, North Carolina's post-deprivation remedies are insufficient........................................................44

C.    *Georgia* Applies to Copyright Claims ................................................52

D.    Allen Preserves His Challenge to Sovereign Immunity Law ............56

CONCLUSION...........................................................................................................57

REQUEST FOR ORAL ARGUMENT ....................................................................57

CERTIFICATE OF COMPLIANCE........................................................................58

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aikens v. Ingram*,
    652 F.3d 496 (4th Cir. 2011) .........................................................................16

*Alden v. Maine*,
    527 U.S. 706 (1999).........................................................................................57

*Allen v. Cooper*,
    589 U.S. 248 (2020).....................................................................31, 32, 34, 54

*Allen v. Cooper(Allen I)*,
    895 F.3d 337 (4th Cir. 2018) ...............................................................*passim*

*Allen v. Zurich*,
    667 F.2d 1162 (4th Cir. 1982) ......................................................................53

*Askew v. Kinston*,
    386 N.C. 286 (2024) ......................................................................................51

*Bell v. Wilmott Storage Servs., LLC*,
    12 F.4th 1065 (9th Cir. 2021) .......................................................................34

*Boddie v. Conn.*,
    401 U.S. 371 (1971).......................................................................................37

*Bowles v. Russell*,
    551 U.S. 205 (2007).......................................................................................19

*Bracey v. Lancaster Foods LLC*,
    838 F. App'x 745 (4th Cir. 2020)............................................................18, 19

*Brammer v. Violent Hues Prods., LLC*,
    922 F.3d 255 (4th Cir. 2019) ........................................................................34

*Britt v. DeJoy*,
    45 F.4th 790 (4th Cir. 2022) ....................................................................22, 23

*Browder v. City of Albuquerque*,
    787 F.3d 1076 (10th Cir. 2015) ....................................................33

*Burke v. Clarke*,
    842 F. App'x 828 (4th Cir. 2021) ................................................26

*Caitlin v. United States*,
    324 U.S. 229 (1945)....................................................................20

*Camden Cnty. v. Ne. Cmty. Dev. Corp.*,
    263 F. Supp. 3d 556 (E.D.N.C. 2017) ........................................49

*Carlson v. Boston Sci. Corp.*,
    856 F.3d 320 (4th Cir. 2017) ......................................................16

*Christopher v. Cavallo*,
    662 F.2d 1082 (4th Cir. 1981) ....................................................50

*Claggett v. Wake Forest Univ.*,
    126 N.C. App. 602 (1997) ..........................................................45

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985)....................................................................37

*Cnty of Sacramento v. Lewis*,
    523 U.S. 833 (1998)....................................................................33

*Cobbledick v. United States*,
    209 U.S. 323 (1940)....................................................................20

*Coffman v. Trickey*,
    884 F.2d 1057 (8th Cir. 1989) ....................................................33

*Corum v. Univ. of N.C.*,
    330 N.C. 761 (1992) .............................................................51, 52

*Daniels v. Williams*,
    474 U.S. 327 (1986)........................................................31, 33, 34

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
    511 U.S. 863 (1992)....................................................................24

*Dillon v. Stafford*,
   2020 WL 7863608 (N.C. Super. Dec. 30, 2020).............................................50

*Dilworth v. Adams*,
   841 F.3d 246 (4th Cir. 2016) .........................................................................33

*Doe v. Univ. of N.C. Sys.*,
   134 F.4th 305 (4th Cir. 2025) ........................................................................35

*Domino Sugar Corp. v. Sugar Workers Local Union 392*,
   10 F.3d 1064 (4th Cir. 1994) ...................................................................22, 23

*Douglas v. Cunningham*,
   294 U.S. 207 (1935).......................................................................................47

*Durham v. Kelley*,
   82 F.4th 217 (3d Cir. 2023) ...........................................................................55

*Elegant Massage, LLC v. State Farm Mut.Auto. Ins. Co.*,
   95 F.4th 181 (4th Cir. 2024) ..........................................................................25

*Erline Co. v. Johnson*,
   440 F.3d 648 (4th Cir. 2006) ....................................................................36, 44

*Estate of Cunningham v. Mayor & City Council of Baltimore*,
   128 F.4th 238 (4th Cir. 2025) ........................................................................15

*Fauconier v. Clarke*,
   966 F.3d 265 (4th Cir. 2020) .........................................................................55

*Fields v. Durham*,
   909 F.2d 94 (4th Cir. 1990) .....................................................................37, 38

*Finch v. Durham*,
   325 N.C. 352 (1989) ......................................................................................49

*Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
   527 U.S. 627 (1999).................................................................................39, 43

*Foman v. Davis*,
   371 U.S. 178 (1962).......................................................................................28

*Franks v. Ross*,
   313 F.3d 184 (4th Cir. 2002) ........................................................16

*Fuentes v. Shevin*,
   407 U.S. 67 (1972)........................................................................37

*Glover v. Rowan Mut. Fire Ins. Co.*,
   228 N.C. 195 (1947) ....................................................................46

*Gnossos Music v. Mitken, Inc.*,
   653 F.2d 117 (4th Cir. 1981) ......................................................47

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)......................................................................35

*Hilao v. Estate of Marcos*,
   393 F.3d 987 (9th Cir. 2004) ......................................................53

*Hudson v. Palmer*,
   468 U.S. 517 (1984)..........................................................38, 39, 43

*Jacobsen v. Katzer*,
   535 F.3d 1373 (Fed. Cir. 2008) ..................................................45

*Jung v. K. & D. Min. Co.*,
   356 U.S. 335 (1958)......................................................................22

*Katyle v Penn Nat'l Gaming, Inc.*,
   637 F.3d 462 (4th Cir. 2011) ..................................................16, 28

*Kobe v Buscemi*,
   821 F. App'x 180 (4th Cir. 2020)................................................26

*Ky. Dep't of Corrections v. Thompson*,
   490 U.S. 454 (1989)......................................................................31

*Laber v. Harvey*,
   438 F.3d 404 (4th Cir. 2006) ..........................................11, 27, 28

*Lawrence v. Swanson Inmate Commissary Servs.*,
   151 F.3d (4th Cir. 1998) ........................................................38, 44

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982)......................................................41, 44, 48, 51

*Longworth v. Mansukhani*,
    134 F.4th 755 (4th Cir. 2025) .................................................30

*Luxton v. North River Bridge Co.*,
    147 U.S. 337 (1893)................................................................20

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)................................................................54

*McClary v. O'Hare*,
    786 F.2d 83 (2d Cir. 1986) .....................................................41

*MDY Indus., LLC v. Blizzard Entmt., Inc.*,
    629 F.3d 928 (9th Cir. 2010) ..................................................45

*NABP v. Board of Regents of the University System of Georgia*,
    633 F.3d 1297 (11th Cir. 2011) ....................................40, 42, 56

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*,
    974 F.2d 502 (4th Cir. 1992) ..................................................26

*Out of the Box Devs., LLC v. LogicBit Corp.*,
    2012 WL 5356282 (N.C. Super. Oct. 30, 2012)........................46

*Paris v. H.G. Fischer & Co.*,
    221 N.C. 110 (1942) ...............................................................48

*Parratt v. Taylor*,
    451 U.S. 527 (1981)..............................................44, 48, 51, 54

*Payne v. Taslimi*,
    998 F.3d 648 (4th Cir. 2021) ..................................................56

*Pickett v. Tex. Tech Univ. Health Scis. Ctr.*,
    37 F.4th 1013 (5th Cir. 2022) .................................................55

*Pike v. Wachovia Bank & Trust Co.*,
    274 N.C. 1 (1968) ..................................................................47

*Pink v. Lester*,
    52 F.3d 73 (4th Cir. 1995) ....................................................................31

*Plumer v. Md.*,
    915 F.2d 927 (4th Cir. 1990) ...............................................................38

*Procter & Gamble Co. v. Colgate-Palmolive Co.*,
    199 F.3d 74 (2d Cir. 1999) ..................................................................34

*Rich v. LaPointe*,
    484 F. App'x 572 (1st Cir. 2012) .........................................................33

*Richardson v. Town of Eastover*,
    922 F.2d 1152 (4th Cir. 1991) .............................................................42

*Rittenhouse v. DeKalb Cnty.*,
    764 F.2d 1451 (11th Cir. 1985) (en banc) ...........................................41

*Rochin v. Cal.*,
    342 U.S. 165 (1952) .............................................................................33

*Rochlin v. P.S. W. Const. Co.*,
    234 N.C. 443 (1951) ............................................................................46

*Rosciszewski v. Arete Assocs., Inc.*,
    1 F.3d 225 (4th Cir. 1993) ..................................................................50

*Smith v. Barry*,
    502 U.S. 244 (1992) ......................................................................18, 19

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*,
    74 F.3d 488 (4th Cir. 1996) ................................................................34

*Tart v. Walker*,
    38 N.C. App. 500 (1978) .....................................................................46

*Tattoo Art Inc. v. TAT Int'l LLC*,
    498 F. App'x 341 (4th Cir. 2012) ........................................................45

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*,
    682 F.3d 292 (4th Cir. 2012) ..............................................................50

*United States ex rel. Citynet, LLC v. Gianato,*
    962 F.3d 154 (4th Cir. 2020) ........................................................35

*United States v. Flores-Granados,*
    783 F.3d 487 (4th Cir. 2015) .......................................................49

*United States v. Georgia,*
    546 U.S. 151 (2006).............................................................*passim*

*United States v. Robinson,*
    744 F.3d 293 (4th Cir. 2014) .......................................................53

*Wall Guy, Inc. v. FDIC,*
    95 F.4th 862 (4th Cir. 2024) ..................................................17, 18

*Ware v. Fort,*
    124 N.C. App. 613 (1996) ...........................................................51

*Washington v. Cline,*
    385 N.C. 824 (2024) ....................................................................51

*Washington v. Harper,*
    494 U.S. 210 (1990).....................................................................32

*Weller v. Dep't of Soc. Servs. for Baltimore,*
    901 F.2d 387 (4th Cir. 1990) .......................................................48

*Wells v. Fuentes,*
    126 F.4th 882 (4th Cir. 2025) ......................................................35

*White v. Trew,*
    366 N.C. 360 (2013) ....................................................................48

*Williamson v. Stirling,*
    912 F.3d 154 (4th Cir. 2018) .......................................................15

*Wolff v. McDonnell,*
    418 U.S. 539 (1974)......................................................................42

*Zinermon v. Burch,*
    494 U.S. 113 (1990).............................................................*passim*

**Statutes**

17 U.S.C. § 101 *et al.* (Copyright Act) ................................................*passim*

17 U.S.C. § 301 ................................................................................46, 50

17 U.S.C. § 511(a) ..................................................................................9

28 U.S.C. § 1291 ..............................................................................20, 21

28 U.S.C. § 1338 ..............................................................................46, 50

28 U.S.C. § 2107(a) ..............................................................................19

N.C. Gen. Stat. § 121-25(b) ....................................................................6

N.C. Gen. Stat. § 132-1 ......................................................................39, 42

N.C. Gen. Stat. § 143-291 ......................................................................48

**Constitutional Provisions**

U.S. Const. amend. XI ..............................................................*passim*

U.S. Const. amend. XIV, §1 ....................................................................54

**Rules**

Fed. R. App. P. 3 ..................................................................................18

Fed. R. App. P. 3(c)(1)(B) ......................................................................17

Fed. R. App. P. 3(c)(6) ......................................................................2, 17

Fed. R. App. P. 4 ..................................................................................19

Fed. R. Civ. P. 12 ................................................................................16

Fed. R. Civ. P. 12(b)(1) ........................................................................12

Fed. R. Civ. P. 12(b)(6) ........................................................................12

Fed. R. Civ. P. 15 ......................................................................1, 28, 29

Fed. R. Civ. P. 15(a) ...............................................................16, 27, 28

Fed. R. Civ. P. 15(a)(2) .......................................................................11

Fed. R. Civ. P. 54 ...............................................................16, 22, 23, 28

Fed. R. Civ. P. 60 .........................................................................*passim*

**Other Authorities**

13 Fed. Prac. & Proc. Juris. §3582 (3d ed.) .......................................50

## INTRODUCTION

In this continuing saga of piracy, Defendants bring their third appeal to this Court. The case involves the pirate Blackbeard, and Plaintiff Frederick Allen's historic documentation of the recovery of Blackbeard's pirate ship. But the effect of Defendants' conduct is piracy on a similarly grand scale: a targeted attempt to take Allen's body of work by intentionally infringing his copyrights and by adopting policies that allow others to do the same, all without any due process or compensation.

Defendants appeal from the district court's order denying their motion to dismiss the complaint based on their defense of sovereign immunity. Yet Defendants begin their argument by challenging a completely different order—one from three years' prior that allowed Allen to amend his complaint following remand from the Supreme Court.

While the amendment order was not included in the instant notice of appeal, it was the subject of a prior appeal that was dismissed on jurisdictional grounds since the order was not final. That dismissal remains the law of the case, as the district court's order still is not final and still does not qualify for any exception permitting appeal. Jurisdiction aside, the district court did not abuse its discretion in allowing Allen to amend his complaint, given the liberal scope of Rule 15 and the district court's well-reasoned analysis that the amendment was timely and not futile.

1

Defendants' sovereign immunity arguments are equally unavailing: Defendants conceded to the Supreme Court that claims crafted as Allen's now are, set out a valid claim from which the states are not immune. That concession was well-grounded, and Allen's claims should be allowed to proceed because, as Defendants admitted before the Supreme Court, the law does not permit Defendants to intentionally infringe with impunity and immunity.

## STATEMENT OF JURISDICTION

This Court lacks jurisdiction as to Defendants' first issue (whether the district court erred by "reopening this case and granting Allen leave to amend his complaint"). The district court's order was entered in 2021. JA60. Defendants appealed, JA20, but their appeal was dismissed because the order was "neither a final order nor an appealable interlocutory or collateral order." No. 21-2040, Dkt 27 at 2; JA21. After Defendants' appeal was dismissed, the district court reiterated its decision in a 2023 order, which Defendants did *not* appeal. JA21-22. When Defendants filed the present notice of appeal, they limited it to "only part" of the order below, by specifying that they appealed only from "those parts" of the "August 20, 2024" order "that denied defendants' motions to dismiss the second amended complaint." JA316; Fed. R. App. Proc. 3(c)(6). Thus, not only does the district court's decision remain interlocutory, but the challenged rulings were not the subject of the notice of appeal, and the time for

2

appealing the lower court's orders—even if such an appeal were allowed—has long passed.

Allen agrees this Court has jurisdiction to resolve Defendants' second issue (sovereign immunity) pursuant to the collateral-order doctrine.

## STATEMENT OF THE CASE

"Blackbeard was an outlaw, not a role model." Second Amended Complaint (JA83)("SAC") ¶14. Yet over the last fifteen years, Defendants have emulated him, engaging in a concerted campaign of intentional piracy to steal Allen's property for their monetary gain. The district court determined that Allen's complaint "checks all of [the] boxes" to overcome sovereign immunity at the pleading stage. JA303. This appeal followed.

## I.    Allen Creates a Treasure Trove of Copyrighted Footage

Blackbeard, the most (in)famous pirate of all time, commanded the *Queen Anne's Revenge* ("QAR")—the most famous pirate vessel of all time. Their journey together began in 1717 when Blackbeard captured what became the QAR and transformed her into a fear-inspiring warship with 40 cannons and over 300 crewmen. Blackbeard used *Queen Anne's Revenge* to build a fearsome reputation and plunder vessels on the high seas. In May 1718, Blackbeard used the QAR to blockade Charleston Harbor and hold its inhabitants for ransom. Weeks later, the

3

ship was destroyed when Blackbeard ran it aground near Beaufort Inlet, North Carolina.

In the centuries that followed, the ship that had once *carried* priceless treasure *became* priceless treasure as it remained hidden beneath the waves. Archaeologists and treasure hunters from around the world searched for the remains of the QAR, without success.

In 1996, one explorer—Intersal, Inc.—succeeded, locating the ship's remains in the turbulent waters and shifting sands of Beaufort Inlet. Intersal then hired filmmaker Frederick Allen, providing him the opportunity of a lifetime as the exclusive videographer for the recovery of the ship and its remaining contents. SAC¶57.

For almost two decades, Allen risked life, limb, and a small fortune documenting the excavation. This work was treacherous—working in high currents and low visibility. It took hours of dive time to capture mere seconds or minutes of footage. SAC¶63.

Allen invested this time, energy and money because he understood that the resulting works would be integral to any commercialization of the discovery, recovery, and preservation of the QAR. He protected his work by registering 13 copyrights with the Copyright Office, each covering a year of videos. SAC¶71.

Allen's copyrights are the culmination of his life's work and have immense commercial value. The works are the only high-quality imagery of the QAR in existence. Given the high demand for his footage, conservative estimates place the value of Allen's property at over $1 million. SAC¶¶72, 123.

## II.    Defendants—Continuously, Intentionally, and in Bad Faith—Pirate Allen's Valuable Work

Allen recognized that unfettered distribution of his work could eviscerate its commercial value. Because Defendants had access to Allen's work, Allen put them on notice of their obligations to respect his copyrights and protect the value of the footage. Allen expressly instructed that Defendants were not authorized to post or distribute his work on YouTube or other social media sites, and required protective measures and markings to prevent commercial use of the footage. SAC¶¶75-77. Defendants acknowledged Allen's copyrights and their obligations, but then began a long-running campaign to infringe those copyrights and eliminate Allen's ability to monetize his work. SAC¶¶76, 79 *et seq.* That campaign, and Defendants' refusal to discontinue their infringements, led to this lawsuit.

In January 2011, Allen sustained life threatening injuries resulting from the explosion of a defective dive tank. He lost his left arm, was badly burned and spent two months in a coma. While Allen was recovering, one or more state agents began copying and disseminating Allen's copyrighted works on the internet without Allen's consent. JA97-98. Allen first discovered these infringements in

2013. He immediately addressed his concerns with Defendants, who settled the dispute.

Under the settlement agreement, Allen was compensated for the alleged infringements and the State and its agency agreed, *inter alia*, to return Allen's footage, not to use Allen's footage for any commercial or promotional purposes without Allen's express permission, and to comply with marking requirements. SAC¶¶90-94.

Almost immediately after signing the agreement, Defendants began violating it. The friction between Defendants and Allen increased markedly as Allen insisted Defendants comply with their obligations under the agreement and under copyright law. State agents called for an in-person meeting with Allen at which they chastised Allen for attempting to monetize his "hobby" and for refusing to "volunteer" his time and services to the State's project. SAC¶¶96-100.

Defendants then attempted to force Allen to enter into a new contract allowing the State and its agency to use Allen's footage for commercial purposes. When Allen refused, a plan was devised to "punish" Allen and steal the property. SAC¶102. The State effectuated the plan by passing "Blackbeard's Law," N.C. Gen. Stat. § 121-25(b)—a statute that "was devised for, directed to, and targeted at Allen"; he is "the *only* person[] on the planet with an extensive corpus of [copyrighted] work" that would be affected by the bill. SAC¶105. That targeted

purpose was admitted by the State senator who introduced the legislation on behalf of Defendants. SAC ¶¶ 101-117.

Blackbeard's Law amended state law in two ways. JA103-105. *First*, it specifically targeted Allen's body of work and ensured its treatment as a "public record":

> All photographs, video recordings, or other documentary materials of a derelict vessel or shipwreck or its contents, relics, artifacts, or historic materials in the custody of any agency of North Carolina government or its subdivisions shall be a public record.

*Second*, it provided a new consequence of such designations that nullified the protections Allen had negotiated, and allowed Defendants to infringe Allen's copyrights intentionally and with impunity:

> There shall be no limitation on the use of or no requirement to alter any such photograph, video recordings, or other documentary material, and any such provision in any agreement, permit, or license shall be void and unenforceable as a matter of public policy.

SAC ¶ 103.

Allen did not receive any notice of the pendency of the bill or any opportunity to challenge it prior to its passage. SAC ¶¶ 110, 115.

Immediately upon the passage of the bill, pursuant to this newly-codified policy, Defendants resumed their intentional infringement of Allen's copyrights by copying, displaying, and distributing copies of Allen's works without consent,

attribution, or compensation. SAC¶¶118-122 & Tbl.2. They did so by posting videos on the Internet, publishing Allen's works in a magazine, displaying Allen's works in a State museum, and distributing copies of Allen's works for free.[1] *Id.* In so doing, they destroyed the value of Allen's life's work. SAC¶¶109, 164. They did so "despite having full knowledge that Allen opposed [Defendants'] use of his footage, that [their] actions constituted willful copyright infringement, and that [their] acts violated the [State's 2013 agreement with Allen]." SAC¶¶109, 118-123.

## III. This Court Dismisses Allen's Claims "Without Prejudice"

Allen filed suit in December 2015 against the State, a State agency and various State agents (both officially and personally), all collectively referred to as the "State," and against a third party, Friends of Queen Anne's Revenge ("FoQAR"), which had assisted and participated in Defendants' infringements. Allen asserted claims for copyright infringement, violations of the Due Process Clause, and unconstitutional takings. Allen sought damages as well as injunctive and declaratory relief regarding Blackbeard's Law. JA29-52.

---

[1] No discovery has yet been taken, but State witnesses recently testified under oath, in a N.C. Business Court trial, that the State's policy was to instruct potential licensees to obtain Allen's works from the state (for free) rather than paying Allen for a license.

All of the then-defendants other than FoQAR moved to dismiss the complaint on immunity grounds. JA12, Dkt 49,50. Allen responded that Congress, through the Copyright Remedy Clarification Act, 17 U.S.C. § 511(a) ("CRCA"), prophylactically abrogated sovereign immunity for copyright infringement. JA13, Dkt 56. The district court agreed that CRCA validly abrogated sovereign immunity, and allowed Allen's copyright infringement claim to proceed on that basis. JA14, Dkt 69.

On appeal, this Court concluded that the CRCA's prophylactic abrogation of sovereign immunity—while "a clear statement of congressional intent"—was nonetheless invalid because it exceeded Congress's constitutional power. *Allen v. Cooper*, 895 F.3d 337, 353 (4th Cir. 2018) ("*Allen I*"). This Court also determined that Allen's individual capacity claims against state officials did not survive qualified immunity or legislative immunity. *Id*. at 256-58. Accordingly, the Court remanded with instructions for the district court to dismiss Allen's individual-capacity claims "with prejudice" and to dismiss his state and official-capacity claims "*without* prejudice." JA53 (emphasis added).

## IV. State Concedes It Lacks Immunity for Intentional Infringement

Allen appealed this Court's decision to the Supreme Court, which granted Allen's petition for certiorari. The State repeatedly conceded that copyright infringement can violate the Constitution. Defts. S. Ct. Resp. at 32 (describing

situations where "copyright infringement violates the Constitution"); S. Ct. Tr. at

35 ("copyright infringement can "rise[] to a constitutional violation"), 46

(discussing "copyright infringement that also violated the Constitution").

Defendants also conceded that the Supreme Court's decision in *United

States v. Georgia*, 546 U.S. 151 (2006), can be used to avoid sovereign immunity

for copyright infringements that violate due process, stating:

> Whenever a plaintiff can reasonably allege that there has been
> intentional copyright infringement and there are not adequate
> remedies, then, under this Court's *Georgia* decision, [he] can
> bring a direct constitutional claim. We don't dispute that.

S. Ct. Tr. 39:21-40.

Defendants reiterated their position multiple times:

> JUSTICE BREYER: Your view is that … under the Fourteenth
> Amendment, this [§ 511(a)'s abrogation of states' sovereign
> immunity] is valid insofar as [a state] deliberately takes
> property from people[?]
>
> MR. PARK: Yes[.]
>
> …
>
> JUSTICE BREYER: [...] You're just saying it only applies to
> instances where the state deliberately takes [a copyrighted
> work]. That … is the concession on your part?
>
> MR. PARK: I think it follows naturally from this Court's
> *Georgia* decision[.]

*Id.* at 40-41; Defts. S. Ct. Resp. at 55-56 ("Congress may use Section 5 to abrogate

state sovereign immunity for the narrow subset of copyright infringement that is

actually unconstitutional." (citing *Georgia*, 546 U.S. at 158)); *see also* OB13-14[2]

(acknowledging oral argument concessions).

As noted above, the ultimate result was affirmation of this Court's decision.

## V.    District Court Allows Allen to Amend His Complaint to Allege Intentional Infringement Without Adequate State-Law Remedy

### A.    District Court Allows Allen to Amend Complaint

The district court, which had stayed proceedings pending the Supreme

Court's decision, lifted the stay after affirmance. JA17-18 (Dkt 95, 101). It then

entered a 25-page order granting Allen's request to file an amended complaint.

JA60-84. In allowing the amendment, the district court recognized that *Georgia*

could "serve[] as a valid basis for plaintiffs to bring their constitutional claims."

JA83. The district court recognized that amendment should be "freely given when

justice requires" and that "'[t]his liberal rule gives effect to the federal policy in

favor of resolving cases on their merits instead of disposing of them on

technicalities.'" *Id*. (citing Fed. R. Civ. P. 15(a)(2) and quoting *Laber v. Harvey*,

438 F.3d 404, 426 (4th Cir. 2006)). The district court rejected the State's attempt to

litigate the issue on the merits before Allen had the opportunity to "buttress [his]

allegations" by way of an amended complaint. *Id*.

---

[2] Defendants' Opening Brief ("OB").

**B.      State Files Improper Interlocutory Appeal**

On September 20, 2021, the State appealed the district court's order

allowing Allen to file an amended complaint. JA20. The case was stayed pending

the outcome of that appeal. JA21.

On October 14, 2022, this Court dismissed the State's appeal, ruling that

"the order Appellants seek to appeal is neither a final order nor an appealable

interlocutory or collateral order." No. 21-2040, Dkt 27. Its mandate issued on

November 7, 2022. *Id.*

**C.      Allen Files Amended Complaint**

On January 18, 2023, the district court lifted the stay.

On February 8, 2023, Allen filed his SAC, alleging in detail that the State

intentionally infringed Allen's copyrights without affording Allen sufficient

process or an adequate remedy.

**VI.    District Court Rejects Defendants' Argument that Second Amended
         Complaint Must Be Dismissed in its Entirety**

Defendants moved to dismiss the SAC under Rules 12(b)(1) and 12(b)(6). In

a 44-page order, the district court thoroughly addressed each of Defendants'

arguments and accepted many of their positions. But the district court found the

complaint "checks all of *Georgia's* boxes" for a valid as-applied abrogation of

sovereign immunity, since Allen "plausibly alleged that the State's direct copyright

infringements in violation of the Copyright Act also constitute a procedural due

process violation." JA303. In other words, the district court determined that Allen plausibly alleged "intentional, or at least reckless, [infringements]" and that "the state faile[d] to offer an adequate remedy that satisfies the demands of the Due Process Clause." JA303. Thus, the district court allowed Allen to pursue his claims against the parties who had previously been dismissed "without prejudice," based on the legal theory the State has expressly conceded validly overcomes sovereign immunity. This appeal followed.

## SUMMARY OF ARGUMENT

### I.    There is Neither Appellate Jurisdiction nor Merit as to Defendants' First Issue

Whether the district court erred by "reopening this case and granting Allen leave to amend his complaint" is not properly before this Court and lacks merit. This Court lacks appellate jurisdiction because the order purportedly appealed from was not included in Defendants' limited notice of appeal; because the appeal as to this issue was not timely filed; and because the order appealed from is not a final judgment and no exception permitting interlocutory or collateral appeal applies. The issue also has been forfeited, and Defendants' arguments fail on the merits because Defendants have not shown any abuse of discretion by the lower court in allowing Allen to amend his complaint. This Court should dismiss the appeal as to this issue or, in the alternative, affirm.

II.    **The District Court Correctly Declined to Dismiss the Complaint Based on the Defense of Sovereign Immunity**

For over a decade, Defendants have targeted Allen and attempted to steal his life's work. When Allen resisted, Defendants retaliated by placing Allen's copyrights into the public domain and encouraging state officials to infringe. At this stage, Defendants do not deny their infringement. Instead, they claim that sovereign immunity shields their theft from scrutiny.

Sovereign immunity does not extend so far. The Supreme Court established the relevant framework in *United States v. Georgia*: Congress "validly abrogates sovereign immunity" when it "creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." 546 U.S. at 159. Under that framework, Allen need only allege that the conduct giving rise to the alleged infringement also violated due process. *Id.*

The SAC readily meets this standard. It alleges that Defendants intentionally infringed Allen's copyrights, that the infringements were carried out under a policy created to deprive Allen of his copyrights, and that Defendants did not provide Allen with any process to challenge the infringements or the policy on which they were based.

In arguing otherwise, Defendants ignore the relevant legal standards. Instead of accepting Allen's factual allegations and drawing all reasonable inferences in Allen's favor, Defendants disregard the alleged facts and draw *un*reasonable

14

inferences in their own favor. Instead of viewing the Due Process Clause as a bulwark against individual persecution, Defendants claim it only prohibits deprivations that apply "*generally*." Instead of evaluating Defendants' intent using the subjective standard set out by the Supreme Court, Defendants import qualified immunity's objective "beyond debate" standard (even though Defendants have not and cannot assert qualified immunity). Instead of addressing their concession at the Supreme Court—that *Georgia* abrogation can apply to copyright due process claims—Defendants argue no such claim can exist.

In denying the motion to dismiss, the district court correctly found that the SAC "checks all of Georgia's boxes." JA303. This Court should affirm.

## ARGUMENT

## I.   Standards of Review

### A.   Jurisdiction is the *Sine Qua Non* of any Appeal

Before any merits-based review can proceed, this Court must be satisfied that appellate jurisdiction exists. *Williamson v. Stirling*, 912 F.3d 154, 168 (4th Cir. 2018). Appealability is jurisdictional. Appellate courts have "an independent obligation" to determine the finality and appealability of an order or judgment before acting on the appeal. *Estate of Cunningham v. Mayor & City Council of Baltimore*, 128 F.4th 238, 242 (4th Cir. 2025).

**B.      Defendants' Procedural Challenges are Reviewed for Abuse of Discretion**

Orders allowing parties to amend their complaint under Rule 15(a) are reviewed for abuse of discretion. *Katyle v Penn Nat'l Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011) . The same is true for orders on motions for reconsideration under Rule 54(b) and for orders to amend a judgment under Rule 60(b). *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017); *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011).

**C.      Issues of Sovereign Immunity and Sufficiency of a Complaint Are Reviewed De Novo**

Whether a defendant is entitled to sovereign immunity is a question of law, reviewed de novo. *Franks v. Ross*, 313 F.3d 184, 192-93 (4th Cir. 2002). Whether a complaint satisfies the pleading requirements of Rule 12 is also reviewed *de novo*. *Id.* at 192.

**II.     The District Court's Decision Allowing Allen to Amend his Complaint Should Not Be Reversed**

Defendants challenge district court orders entered in 2021 (JA60) and 2023 (JA21-22 at Dkt 133) "reopening the case"[3] and allowing Allen to amend his complaint. Their challenge fails, since this Court lacks appellate jurisdiction over

---

[3] Defendants' reference to "reopening" of the case is wrong. As noted in §4 below, no final judgment was ever entered, and the case did not require "reopening" because it was never closed.

the issue. In addition, Defendants have forfeited their right to raise this issue,

which has not been preserved. Even if that were not the case, the challenge would

fail on the merits.

## A.    This Court Lacks Appellate Jurisdiction Over Defendants' First Issue

The burden of establishing appellate jurisdiction rests on the party asserting

jurisdiction. *Wall Guy, Inc. v. FDIC*, 95 F.4th 862, 868 (4th Cir. 2024). Defendants

have not met that burden.

There are at least three independent reasons why appellate jurisdiction does

not exist: *first,* the notice of appeal—which was specific and limited—did not

include the orders Defendants now seek to challenge; *second*, the appeal was not

timely filed; and *third*, the challenged orders are not a final judgment, do not fit

under the collateral order doctrine, and do not otherwise qualify for exercise of

pendent jurisdiction.

### 1.    Defendants failed to identify the challenged orders in their notice of appeal

Fed. R. App. Proc. 3(c)(1)(B) requires the appellant to designate, in their

notice of appeal, "the judgment—or the appealable order—from which the

appeal is taken." While a general notice of appeal is permissible, "[a]n appellant

may designate only part of a judgment or appealable order by expressly stating that

the notice of appeal is so limited." Rule 3(c)(6). Such specific notices of appeal are

not governed by the merger principle and thus do not encompass any subject

matter other than the parts of the order or judgment that are specified. Fed. R. App.

Proc. 3 Advisory Committee's Note to 2021 Amendment.

Defendants took advantage of the "limited appeal" option and gave notice of

appeal *only* "from those parts of parts of the district court's order [D.E. 168]

entered on August 30, 2024, that denied defendants' motions to dismiss the second

amended complaint." JA316 (brackets in original). Defendants' self-limited notice

did not include orders entered prior to August 30, 2024, and did not include the

district court's rulings granting reconsideration of its earlier order and permitting

Allen to file the SAC.

Defendants' limited notice of appeal is binding. This Court has been clear

that where a party fails to identify a challenged order in their notice of appeal (or

equivalent filing within the 30-day period), they lose the ability to pursue that issue

on appeal. *Bracey v. Lancaster Foods LLC*, 838 F. App'x 745, 748 (4th Cir. 2020)

(finding no appellate jurisdiction for lack of compliance with Rule 3); *Wall Guy*,

95 F.4th at 873. Because these requirements are jurisdictional, the Court cannot

address the issue, even if it wanted to. *Smith v. Barry*, 502 U.S. 244, 248 (1992);

*Wall Guy*, 95 F.4th at 867 (despite liberal application of Rule 3, "non-compliance

remains fatal to an appeal").

18

Thus, because Defendants' notice of appeal did not include the district court's orders "reopening" the case and permitting Allen to file the SAC, their first issue (which challenges only those actions) must be dismissed.

## 2.    Defendants' notice of appeal was untimely

Not only must a notice of appeal identify the orders appealed from, but it also must be timely filed. In particular, appellate jurisdiction is limited by 28 U.S.C. § 2107(a) and Fed. R. App. Proc. 4, requiring parties to file their notice of appeal no later than thirty days after entry of the judgment or order from which they appeal. The rule, grounded in statute, is not merely "claims-processing," but jurisdictional. *Bowles v. Russell*, 551 U.S. 205, 206-210 (2007); *Smith v. Barry*, 502 U.S. at 248; *Bracey*, 838 F. App'x at 748.

The district court's orders allowing Allen to pursue his claim and to amend his complaint to better explain the basis for that claim were first entered in 2021 (JA87) and reiterated in 2023 (JA21-22 at Dkt 133). The 2021 order was appealed, and the appeal was dismissed by this Court as interlocutory; the 2023 order was never appealed. JA21-22. The 2024 order did not "reopen" the case, and did not decide that Allen should be permitted to amend his complaint. Those issues had already been determined and re-determined. Thus, Defendants' current appeal, filed on September 30, 2024 (JA316), was simply too late to meet the 30-day deadline for an appeal from those 2021 and 2023 orders.

### 3.  The "final judgment rule" discourages interlocutory appeals and piecemeal appeals

The final judgment rule, embodied in 28 U.S.C. § 1291, requires that all claims and issues presented in a case be decided by the district court before any appellate review. A *final* decision or judgment is often defined as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Caitlin v. United States*, 324 U.S. 229, 233 (1945).

The purpose of the final judgment rule is to avoid piecemeal appeals, or successive appeals of individual rulings throughout the course of the litigation. *Luxton v. North River Bridge Co*., 147 U.S. 337, 341 (1893) ("The case is not to be sent up in fragments."). Avoiding piecemeal appeals serves several interrelated goals, including promoting the efficient administration of justice; preventing delay, harassment, or costs caused by interlocutory appeals; and safeguarding the independence and autonomy of the district courts. *Cobbledick v. United States*, 209 U.S. 323, 325 (1940). Allowing Defendants to repeatedly relitigate the propriety of the district court's 2021 decision would be an abuse of the final judgment rule and encourage waste of the limited resources of this Court and the district court.

**4.** **This appeal is interlocutory and subject to dismissal because there is no final judgment, the collateral order doctrine does not apply, and there is no basis for exercise of pendent jurisdiction**

__The appeal is interlocutory:__ Under 28 U.S.C. §1291, appellate jurisdiction only extends to "final" decisions of the district courts, but the order granting Allen leave to amend his complaint was not a final order. It merely allowed the case to continue, just as this Court intended when it ordered the district court to dismiss Allen's claims against the official-capacity defendants and state parties without prejudice—an order affirmed by the U.S. Supreme Court. (No. 17-1522, Dkt 81, 98).

Defendants previously appealed the lower court's order carrying out this Court's mandate, in 2021, objecting—as they do now—to the lower court's order allowing Allen to file the SAC. This Court held there had been no final judgment and dismissed the appeal as interlocutory. JA21; *see* No. 21-2040, Dkt 27. But now, Defendants argue yet again that the court below should not have "reopened" the case and permitted Allen to amend his complaint.

The thrust of Defendants' argument is that the district court's order dismissing the state defendants "without prejudice" constituted a final order that closed the case. They claim that, because the order was "final," the decision to "reopen" the case should be viewed as an order providing "relief from a final judgment" under Rule 60(b). But the dismissal order was not final, and the case was never "closed."

21

Cases in which claims are dismissed without prejudice are not inherently final judgments. "It is well established that dismissals made without prejudice when leave to amend is granted are not [final]." *Britt v. DeJoy*, 45 F.4th 790, 794 (4th Cir. 2022) (en banc) (citing *Jung v. K. & D. Min. Co.,* 356 U.S. 335, 336-37 (1958)). That principle is not new. When this Court decided *Allen I* (and ordered dismissal of the State and official-capacity defendants "without prejudice"), finality was governed by *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1067 (4th Cir. 1994). *Domino* held that dismissals without prejudice are not appealable "unless the grounds for dismissal clearly indicate that no amendment in the complaint could cure the defects in the plaintiff's case." In *Britt*, this Court, sitting *en banc*, adopted a new bright-line rule: a final, appealable judgment exists in "dismissal without prejudice" situations only where a lower court has both dismissed the case without prejudice *and* failed to provide permission to amend the complaint. *Britt*, 45 F.4th at 795-796.

What did not change, however, is the rule that no final judgment exists when only a portion of the defendants in a case are dismissed, leaving claims against others pending, unless a court expressly orders otherwise. Fed. R. Civ. P. 54(b). FoQAR had not participated in the appeals, and remained a party throughout the course of *Allen I*. Throughout the time FoQAR remained a party to the lawsuit, the district court took only the following actions, *seriatim:* dismissed claims against

Defendants without prejudice and ordered the remaining parties to file a status report, on 08/24/2018 (JA17), stayed that order on 09/27/2018, lifted the stay and ordered a new status report from the parties on 6/30/20, and then ordered that Allen be allowed to file a motion for reconsideration, which Allen promptly did (JA18). At no point in this process had a "final judgment" been entered in the case. This is true under the then-binding *Domino* standard (since the dismissal "without prejudice" did not deny leave to amend and did not include a finding of futility) as well as the more recent *Britt* standard (since the district court *did* grant Allen leave to amend his complaint). Indeed, this Court already ruled that no final order had been entered at the time the lower court allowed Allen to amend his complaint, 3 years after the "without prejudice" dismissals had been entered. No. 21-2040, Dkt. 27 ("Upon review of the record, we conclude that the order Appellants seek to appeal is neither a final order nor an appealable interlocutory or collateral order."); *see also* JA79 ("In this case, final judgment was never entered[.]").

Defendants invite a debate as to whether the district court order allowing Allen to amend his complaint should be evaluated under Rule 54 or, alternatively, under Rule 60. But on the facts of this case, that is a distinction without difference. Where a claim is dismissed without prejudice and where leave to amend is granted, there is no finality, and any appeal is to be dismissed as interlocutory—regardless of whether the challenged order arises under Rule 54 or Rule 60. Thus,

Defendants' procedural challenge presents an issue that has always been treated as interlocutory, was previously treated in this very case as interlocutory (JA20), and remains interlocutory.

**The collateral order doctrine, an exception allowing appeal of certain interlocutory orders, does not apply:** A few exceptions to the final judgment rule permit interlocutory appeals. Here, the only possible exception would be the collateral order doctrine, which allows direct appeal of a small class of decisions that: (1) are conclusive, (2) resolve important questions completely separate from the merits, and (3) would render such important questions effectively unreviewable on appeal from final judgment in the underlying action. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1992).

This Court previously found that the district court's August 18, 2021, order—the order defendants seek to challenge in their first issue—was *not* a collateral order. No. 21-2040, Dkt 27 ("[T]he order Appellants seek to appeal is .. [not] an appealable interlocutory or collateral order"). What was true then remains true now, and this portion of Defendants' appeal should again be dismissed.

**Exercise of pendent jurisdiction would not be appropriate:** Where there is no statutory authority, appellate jurisdiction can be found only in the court's pendent jurisdiction. Pendent jurisdiction should be exercised "sparingly," and only if the issue is "inextricably intertwined with" an appealable question, or if

"resolution of the pendent issue is necessary, or essential in resolving the immediately appealable issue." *Elegant Massage, LLC v. State Farm Mut.Auto. Ins. Co.*, 95 F.4th 181 (4th Cir. 2024).

Defendants' first issue does not satisfy that test. It merely questions which of two Rules of Civil Procedure should have been utilized by the lower court in allowing Allen to file an amended complaint. That question has nothing to do with the properly appealable question of sovereign immunity, and can be decided independently. Indeed, if it were true—which Allen denies—that Defendants are immune from suit, they would be immune regardless of the basis on which the lower court had permitted the amended claims to be filed. Defendants' opening brief confirms that the two issues are analytically distinct: the sovereign immunity question is entirely independent of the procedural rule the district court applied in allowing amendment.

For all these reasons, Defendants' appeal of the first issue is interlocutory, and cannot be saved by either the collateral order doctrine or by exercise of this Court's pendent jurisdiction.

## B.   Defendants Waived their First Issue by Failing to Assert It in their 2021 Appeal

The same policy reasons that underlie the final judgment rule also underpin the long-established rule that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal.

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 505 (4th Cir. 1992).

All the district court's actions of which Defendants now complain occurred in August of 2021 and were the subject of Defendants' prior appeal. As part of that appeal, the parties briefed the question of whether the challenged order qualified as a "collateral order" that could support appellate jurisdiction. *See* No. 21-2040, Dkts 22, 24, 26. This Court considered those arguments, concluded the order was not a collateral order, and dismissed the appeal. JA21; No. 21-2040, Dkt 27.

At no point in the prior appeal did Defendants bring to this Court's attention the lower court's alleged failure to properly consider the requirements of Rule 60(b). JA21, and *see* No. 21-2040, Dkt 24.

Although the waiver rule is "a rule of prudence rather than jurisdiction" (*Kobe,* 821 F. App'x at 185), this Court has consistently held that arguments not timely raised are forfeited. Defendants forfeited its first issue by failing to raise these arguments in their 2021 appeal and made no showing that the issue was preserved at any point thereafter. *See, e.g., Burke v. Clarke*, 842 F. App'x 828 (4th Cir. 2021) (failure to argue against lower court ruling in opening brief waived argument for purposes of reply); *Kobe v Buscemi*, 821 F. App'x 180 (4th Cir. 2020), citing *Omni,* 974 F.2d at 505 (where an argument could have been raised on initial appeal, it is inappropriate to consider it on a second appeal following remand).

26

### C.    Defendants' First Issue Also Fails on the Merits

In *Allen I*, this Court dismissed Allen's entity and official-capacity claims against Defendants without prejudice. (No. 17-1522, Dkt 81 and 98.) In keeping with that order, Allen sought leave to file an amended complaint, which the district court granted pursuant to Rule 15(a). The order granting leave to amend was well within the district court's discretion, as the prior dismissal was without prejudice, the motion to amend was timely, and the requested amendment was not futile.

Defendants attempt to recast the Court's actions as revisiting a "final judgment" in the case, but as explained in Arg. §II.4 above, Defendants are wrong. At the time the lower court issued its initial dismissal, and at the time the lower court allowed Allen to file his motion for reconsideration, Allen's claims against FoQAR had not been dismissed and there was, therefore, no final judgment. Although a settlement was later reached with FoQAR, that occurred only after the lower court already had permitted Allen to file his motion for reconsideration, which he did within the time allotted. JA17-18.

Of course, allowing amendment of claims against a dismissed party *does* require entry of an order, but such orders are to be liberally granted. *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006)(en banc). Even if the motion is brought post-judgment, the court "need not concern itself" with Rule 60 standards, and instead

"need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a)." *Katyle*, 637 F.3d at 471. The guiding principle is that leave to amend "shall be freely given when justice so requires," and should be denied only if amendment would be futile, such that the complaint would fail regardless of the facts that may be alleged or the parties that may be sued. *Id.*, citing *Laber,* 483 F.3d at 427; *see also*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15.

Instead of looking to Rule 15, Defendants focus on their allegation that the district court acted pursuant to Fed. R. Civ. P. 54 rather than 60(b). OB26-31. Defendants are wrong:

- Allen's motion was based on Rule 60(b), (JA58), and as the district court said, his motion was granted. JA60, ¶1.

- The lower court did indeed state that relief could be granted under Rule 54, but *also* expressly stated that relief would be appropriate under *either* Rule 54 *or* Rule 60(b). JA80.

Thus, the purported "abuse" of which Defendants apparently complain—that Rule 60 was ignored—simply did not occur. Moreover, contrary to Defendants' assertion, the lower court provided a detailed consideration of Rules 54 and 60, amply considering the factors required for reconsideration under either Rule and finding in multiple locations that Allen's request to amend was timely, was not

futile, would not cause defendant unfair prejudice, and was justified by extraordinary circumstances. *See, e.g.*, JA66-67, JA77-79.

It is the burden of the challenger—here, Defendants—to establish why and how a lower court has abused its discretion in permitting amendment. Defendants do not claim—nor could they—that amendment is futile. At most, they theorize the district court must not have properly evaluated futility because the court did not expound at length on its analysis—despite articulating that it did indeed consider Rule 15 and its requirements. JA83. But futility is a non-starter, since (a) Defendants expressly approved of Allen's legal theory at the Supreme Court, *see supra,* Stmt §IV; (b) the district court considered the sufficiency of Allen's legal theory as part of its order granting leave to amend, JA80-81; and (c) the SAC ultimately survived Defendants' motion to dismiss, JA303-304.

Given the delays caused by Defendants in terms of moving the case forward, Allen's SAC is actually a very early-stage amendment of his claims, prior to the filing of any answer by Defendants.[4] Permitting it was well within the district court's discretion.

---

[4] Defendants' suggestion (at OB23) that Allen "could have" amended his complaint earlier is misleading. This is not a typical lawsuit, where defendants have answered the complaint and discovery is well underway. Here, Defendants have not yet even answered the first amended complaint (filed at the outset of the case, making minor changes to the original complaint). Instead, Defendants have repeatedly filed motions and appeals in an attempt to impede the lawsuit's progress, miring Allen in procedural briefing. Hence, *ten years* after Allen filed his

### III. Defendants Are Not Entitled to Sovereign Immunity

To defeat sovereign immunity, Allen must follow the path set out in *United States v. Georgia* by alleging a violation of the Copyright Act and a corresponding violation of the Constitution (here, his due process rights). *See Georgia*, 546 U.S. at 159.

When evaluating the sufficiency of a complaint, the Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in the light most favorable to the plaintiff. *Longworth v. Mansukhani*, 134 F.4th 755, 757 n.1 (4th Cir. 2025).

### A. Allen Has Alleged a Violation of the Copyright Act

The SAC describes a pervasive campaign of copyright infringement. SAC ¶¶79-86, 118-122 & Tbl.2, 133-135; JA290 ("Allen provides detailed accounts of his copyrights and the DNCR's alleged infringements ... ."). Defendants do not dispute that Allen has stated a claim for copyright infringement.

### B. Defendants' Infringement Violated Due Process

The government violates procedural due process when it (1) deprives a person of their right to life, liberty, or property (2) without providing sufficient

---

lawsuit, he still has not had the benefit of a factual response from Defendants. And, until the Supreme Court declared unconstitutional a statute that provided a straightforward, Congressionally-approved path to suing the State for its copyright infringement, there was no need for Allen to explain in his pleadings why alternative routes to the same result also exist.

process. *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Allen

has alleged both elements.

### 1. Defendants deprived Allen of his property

Defendants' infringement constitutes deprivation of property under the Due

Process Clause. The Supreme Court has held—and Defendants do not dispute—

that Allen has a property interest in his copyrights and that infringement can

violate that property interest. *Allen v. Cooper*, 589 U.S. 248 at 261-62 (2020).

Even so, the Fourteenth Amendment does not care about *every* injury.

Instead, it "restrict[s] violations ... to official conduct that entails some measure of

deliberateness." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995); *Daniels v. Williams*,

474 U.S. 327, 333 (1986). Thus, "ministerial mistakes" or "inadvertent" errors

cannot form the basis for a due process claim. *Pink*, 52 F.3d at 75. In the context of

copyrights, this means one must allege the infringing conduct was "intentional, or

at least reckless." *Allen*, 589 U.S. at 261.

The SAC satisfies this standard. It alleges Defendants intentionally copied,

posted, displayed, and shared Allen's works on their website, on YouTube, in

magazines, and in the state-operated museum. SAC¶¶13, 79, 82, 118-123, 126-130,

135, 145-149. The complaint further alleges that the infringements were part of a

campaign specifically directed to Allen and his works, and that the infringement

continued (in fact, escalated), after Allen asked Defendants to stop. *Id*.

Defendants' argument is based on a different—and incorrect—legal standard. Defendants conflate the standards for due process with those for enhanced copyright damages and qualified immunity. OB39-40 (citing law on copyright damages), 41-42 (qualified immunity). Defendants contend the government violates due process only if it *specifically* intends (or is reckless to) a deprivation (e.g., if infringement is "willful"), and even then, only if the deprivation is so clear as to satisfy qualified immunity's "beyond debate" standard. *Id*.

Nothing supports Defendants' "mix-and-match" approach. The question of what intent is needed to effectuate a "deprivation" under the Fourteenth Amendment is a question of constitutional law that cannot be answered through reference to the Copyright Act or qualified immunity.

Case after case confirms there is no "specific intent" required for a due process violation. The focus is on whether the government's *action* was intentional or reckless, not whether the government intended the *injury*. For example, in *Zinermon v. Burch*, the Supreme Court held that the plaintiff suffered a deprivation of liberty even though the defendants undisputedly did not intend to "effect[] the substantive deprivation." 494 U.S. 113, 137 (1990). Likewise, in *Washington v. Harper*, the Supreme Court found that defendants effected a deprivation by forcibly administering an antipsychotic medication where the defendants intended to administer the drug but did not intend to infringe the plaintiff's liberty. *See* 494 U.S. 210, 227-30 nn.11-12 (1990) (doctors sought to provide appropriate medical

care). The same is true in *Dilworth v. Adams:* this Court found a violation of liberty where the defendant intended to punish a pre-trial detainee, but did not believe its actions violated any established liberty right. 841 F.3d 246, 251-52 (4th Cir. 2016). These cases exemplify a long line of cases repudiating specific intent requirements. *Coffman v. Trickey*, 884 F.2d 1057, 1062 (8th Cir. 1989) ("*Daniels* and *Davidson* are not to be cited for the converse proposition that the defendant must have the specific intent to violate the plaintiff's legal rights." (discussing *Daniels,* 474 U.S. at 3336)); *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 849 n.9 (1998) (government violated due process even though "it was not the ultimate purpose of the government actors to harm the plaintiff" (discussing *Rochin v. Cal.*, 342 U.S. 165 (1952))); *Browder v. City of Albuquerque*, 787 F.3d 1076, 1080-81 (10th Cir. 2015) (Gorsuch, J.) (specific intent only required in exigent or emergency situations); *Rich v. LaPointe*, 484 F. App'x 572, 573-74 (1st Cir. 2012) (Souter, J.) (Maine official deprived plaintiff of property by suspending plaintiff's lobster license, despite believing the suspension was authorized by law); *see also* S. Ct. Tr. at 48 (JUSTICE KAGAN: "It's hard to actually copy something negligently."). For the same reason, there is no "good faith" defense to a due process violation. *Contra* OB40.

These standards provide a clear delineation as to when copyright infringement constitutes a deprivation of property. The government deprives a

rightsholder of their copyright property when it intentionally (or recklessly) copies, performs, or distributes a protected work.[5]

But the SAC survives the motion to dismiss even under Defendants' more exacting "willfulness" standard. The SAC expressly alleges that Defendants' infringement was willful, that Defendants used infringement to retaliate against Allen, and that Defendants timed their infringement to evade judicial scrutiny. SAC ¶¶ 118, 147-48. The SAC further alleges that Defendants continued to infringe after receiving notice from Allen and that Defendants ignored Allen's numerous pleas to cease infringement. SAC ¶¶ 76, 79-80, 89. These facts, presumptively true, compel a finding of willfulness at the pleading stage. *See Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996) (evidence of prior notice "is perhaps the most persuasive evidence of willfulness").

Defendants contend that the qualified immunity ruling in *Allen I* precludes a finding of willfulness. OB41-42. They are wrong. Whether a deprivation is "intentional" under the Due Process Clause turns on a subjective standard that considers the defendant's *actual* mental state. *See Daniels*, 474 U.S. at 330-32. Qualified immunity, on the other hand, involves an *objective* test: "[W]e do not ask

---

[5] Because copyright infringement "is a strict liability offense," not all infringements qualify as deprivations. *Allen*, 589 U.S. at 262; *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 265 (4th Cir. 2019); *see also Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1079-80 (9th Cir. 2021) (defendant infringed even though it did not know it was using the copyrighted work); *Procter & Gamble Co. v. Colgate-Palmolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999) ("'[S]ubconscious' or 'innocent' copying is still copying.").

... whether the defendant officials subjectively knew they broke the law, or even did so deliberately. Instead, we ... ask only whether what the officer allegedly did was undebatably wrong." *Wells v. Fuentes*, 126 F.4th 882, 889-90 (4th Cir. 2025); *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). Thus, this Court's decision that "reasonable officials ... would not have understood *beyond debate*" that their actions infringed, *Allen I*, 895 F.3d at 357, says nothing about Defendants' *actual* intent, and has no bearing on whether Allen has alleged a due process violation. *Wells*, 126 F.4th at 890 n.7 ("[I]f we take step two first, we don't need to know—and therefore don't ask—whether the officers acted with malice.").

*Citynet* (OB41) held only that qualified immunity is unavailable where the asserted claim has an element requiring intentional or reckless conduct, but did not purport to unseat the objective test set out in *Harlow*. *United States ex rel. Citynet, LLC v. Gianato*, 962 F.3d 154, 159-60 (4th Cir. 2020); *see also Wells*, 126 F.4th at 889-90 & n.7 (describing qualified immunity framework, including when courts are permitted to consider subjective intent); *Doe v. Univ. of N.C. Sys.*, 134 F.4th 305, 315-18 (4th Cir. 2025) (allegations of intentional deprivations did not defeat qualified immunity).

In any event, the qualified immunity question in *Allen I* addressed a claim for copyright infringement (which does not have an intent element) asserted against different defendants, for different acts, arising from a different complaint.

35

Thus, even if *Allen I* contained an implicit finding as to the level of intent alleged in the initial pleading, it would not carry over.

The rest of Defendants' due process arguments ignore the relevant pleading standard. Instead of viewing facts in the light most favorable to Allen and drawing all reasonable inferences in his favor, Defendants challenge Allen's allegations and draw unreasonable inferences in their own favor. Thus, Defendants disregard Allen's allegations relating to the 2013 settlement agreement,[6] North Carolina's public records law,[7] Defendants' motives,[8] and Defendants' knowledge regarding the contents of their museum videos.[9] These attorney arguments and speculation cannot override the detailed allegations of willfulness in the SAC.[10]

---

[6] *Compare* OB42 (speculating that state officials could have relied on the 2013 settlement agreement to excuse infringement) *with* SAC¶¶124-25, 181(alleging Defendants disclaimed such reliance and claimed the Agreement was void).

[7] *Compare* OB42 (speculating Defendants could have relied on pre-existing public records law to excuse infringement) *with* SAC¶¶12-13, 101-105, 116, 118-123, 181 (alleging that Defendants passed Blackbeard's Law because public records law did not support infringement).

[8] *Compare* OB42-43 (speculating the infringement's purpose was to advance "research and the education of the public") *with* SAC¶¶11, 82, 100-102, 105, 114, 123, 193-199 (alleging the purpose was to punish Allen, deprive him of property, raise money for themselves, and retaliate against perceived treasure hunters).

[9] *Compare* OB43 (speculating Defendants had no reason to know "that the documentary might contain some of Allen's images") *with* SAC¶139 (state officials *were* aware of the unlawful museum performances).

[10] Defendants vaguely allude to a fair use defense in a *cf.* citation. OB43. Any fair use argument is forfeited, since it was not raised below and was not meaningfully advanced here. *Erline Co. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006) (conclusory remarks insufficient).

### 2. Defendants have not provided any process, let alone sufficient process

To establish a due process violation, plaintiffs must allege that the claimed deprivation was made without sufficient process. The SAC satisfies this element, since it alleges that Defendants did not provide *any* process in connection with their infringements. SAC ¶169 ("Allen did not have an opportunity to be heard and had no means to challenge the infringements, other than through this litigation."); SAC ¶¶110, 112, 115, 173, 183.

Defendants claim post-deprivation state remedies are sufficient. OB43-46. Defendants are wrong: Allen was entitled to pre-deprivation process, and the purported post-deprivation remedies are unavailable and insufficient.

### a. Allen was entitled to pre-deprivation process

**Legal Standard**. The essential element of due process is the opportunity to be heard before being deprived of life, liberty, or property. This is referred to as the "root requirement" of the Due Process Clause, and as "an essential principle." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Boddie v. Conn.*, 401 U.S. 371, 378-79 (1971). The government must provide a hearing prior to any deprivation whenever it has the ability to do so. *Zinermon,* 494 U.S. at 127; *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972); *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990).

37

Although the government need not provide a pre-deprivation hearing where it would be "truly impossible" to do so, that is a very narrow exception. *Lawrence v. Swanson Inmate Commissary Servs.*, 151 F.3d at 1029 (4th Cir. 1998); *Plumer v. Md.*, 915 F.2d 927, 929 (4th Cir. 1990) (exception is "narrow"); *Fields*, 909 F.2d at 97 (exception applies to a "narrow class of cases").

The "controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Hudson v. Palmer*, 468 U.S. 517, 534 (1984). In performing this inquiry, courts apply the framework set forth in *Zinermon*—they consider whether the claimed deprivation was foreseeable, whether it was "unauthorized," and whether pre-deprivation process could avoid the deprivation. *Zinermon*, 494 U.S. at 132-39 (describing inquiry); *Plumer,* 915 F.2d at 930-31 (applying framework).

**That standard does not allow Defendants to avoid providing pre-deprivation process.** The "narrow" exception for "impossible" or "unforeseeable" circumstances does not apply here. Defendants' infringements were expressly authorized by Defendants (SAC¶¶13, 82, 86, 102-109, 118-130, 135, 147-49) who continued to infringe even after Allen informed them their actions were unlawful (SAC¶¶76, 79-80, 89). It is entirely foreseeable that a decision to infringe, *see* SAC¶82, would lead to infringement.

38

There also is no question that Defendants were "in a position to provide ... pre-deprivation process." *Hudson*, 468 U.S. at 534; *Zinermon*, 494 U.S. at 135. For instance, Defendants could have created a clearance process through which Allen could challenge the government's use of his works prior to dissemination. Alternatively, Defendants could have initiated proceedings to effectuate a taking of Allen's property (with fair compensation), while providing Allen with a chance to oppose the taking. Either of these procedures (or a host of others)[11] could have avoided the infringement.

**Defendants rely on the wrong standard, applied inappropriately.**

Defendants claim that pre-deprivation process is required only where a deprivation is (1) carried out according to a policy that "has as its purpose the deprivation of property" and (2) where "it is foreseeable that ... individuals generally, as opposed to [the plaintiff] specifically—would be deprived of property interests." OB47. Defendants further argue that the Supreme Court disclaimed pre-deprivation process for intellectual property in *Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627 (1999). OB44-45. Defendants are wrong.

---

[11] North Carolina's public records law does not authorize (let alone require) the state to distribute public records on the Internet or in state museums. Instead, the public records law states only that "people may obtain copies" of records on request. N.C. Gen. Stat. § 132-1. Thus, even if Defendants were correct in presuming state public records laws can supersede copyright restrictions, which Allen denies, Defendants could have provided process prior to using Allen's works in a manner beyond what was expressly required by North Carolina law.

**Defendants' "Purpose" Requirement Is Not the Law**. Tellingly, Defendants' cases largely predate *Zinermon*, which sets forth the relevant framework, focusing on the foreseeability of deprivations, rather than the "purpose" of the state policy. *See Zinermon*, 494 U.S. at 132-39. *Zinermon* itself involved a policy whose *purpose* was to *prevent* deprivations, but was implemented in a way that made deprivations likely. *Id.* at 123, 134-36. Despite the pure motivation, the Supreme Court held that pre-deprivation process was required, since deprivations were foreseeable and, with process, avoidable. *Id.* at 136-39.

Defendants' "purpose" theory seems to be grounded in dicta from *NABP v. Board of Regents of the University System of Georgia*, 633 F.3d 1297 (11th Cir. 2011). Despite its dicta, *NABP* followed *Zinermon*'s precepts, holding that no pre-deprivation hearing was required because it would be impossible to provide one (the court "[could] not imagine how a State would fashion a pre-deprivation hearing under the facts alleged." *Id.* at 1318-19).[12] Defendants' other cases

_____

[12] *NABP* is further distinguishable on the facts. *NABP* is a copyright case where a professor infringed by copying test questions. *Id.* at 1301-02. The university was not aware of the infringement and did not approve it. *Id.* at 1318. Thus, while the rogue professor may have been able to foresee his infringement, the individualized nature of his conduct made it impossible for the *state* to predict, and thus impossible for the state to provide pre-deprivation process. As set out in the Facts above, and discussed below, Defendants here *were* aware of the infringement and expressly approved it.

40

similarly confirm the controlling question: whether it is possible to provide pre-deprivation process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (pre-deprivation hearings required "absent ... the impracticality" of doing so); *McClary v. O'Hare*, 786 F.2d 83, 87 (2d Cir. 1986) (involving "an accident," "for which no pre-deprivation process could possibly have been provided."); *Rittenhouse v. DeKalb Cnty.*, 764 F.2d 1451, 1456 (11th Cir. 1985) (en banc) ("infeasible" pre-deprivation remedies).

**Even if Defendants' "Purpose" Requirement were Correct, the SAC Meets the Requirement.** The SAC satisfies Defendants' (erroneous) "purpose" requirement since it alleges that the purpose of Defendants' policy was, indeed, to deprive Allen of property. *See supra* at III.B.1; JA301. Although Defendants argue that Blackbeard's Law "merely clarified" pre-existing law and had no improper purpose, their speculation as to what Defendants might be able to prove is inconsistent with the SAC, which alleges Defendants passed and relied on Blackbeard's Law to justify their infringements. SAC¶¶13, 101-109, 116, 118 ("Defendants resumed their infringement ... almost immediately after Blackbeard's Law went into effect."). SAC¶118. At the pleading stage, the SAC's allegations control.

Moreover, Defendants' focus on Blackbeard's Law is misplaced. Allen's claim is not limited to Blackbeard's Law, but arises from Defendants' more general policy to use Allen's works without regard to his copyrights and to use

41

infringement as a vehicle for retaliation. SAC ¶¶ 17, 82. Because that policy "has as its purpose the deprivation of property," it satisfies Defendants' purported test regardless of how one interprets Blackbeard's Law. Indeed, Defendants continue to claim entitlement to infringe even though Blackbeard's Law has been repealed. OB48; JA258-259 ("§ 132-1 still applies to Plaintiffs' records[.]").

**Policies That Target Individuals Are Not Exempt from Due Process.**

Defendants claim pre-deprivation process is not required where a policy targets only one person. In their view, a deprivation is only foreseeable if it impacts "individuals generally, as opposed to the plaintiff specifically." OB47.

This has it backwards. A policy that singles out an individual necessitates *more* process, not less. "The touchstone of due process is protection of the *individual*" against arbitrary government action. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (emphasis added). "[T]he case for due process protection grows stronger as the identity of the persons affected by a government choice becomes clearer; and the case becomes stronger still as the precise nature of the effect on each individual comes more determinately within the decisionmaker's purview." *Richardson v. Town of Eastover*, 922 F.2d 1152, 1158-59 (4th Cir. 1991). Likewise, *NABP* confirmed pre-deprivation process is required where "the state actor knows not only that that he *is* depriving someone of property, but also the *identity* of the aggrieved party." 633 F.3d at 1319.

42

***Florida Prepaid* Does Not Disclaim Pre-deprivation Process.** Defendants

argue that *Florida Prepaid* categorically authorizes the use only of post-

deprivation remedies for copyright infringement. This is incorrect. *Florida Prepaid*

did not consider the distinction between pre- and post- deprivation remedies.

Instead, the question was whether Congress developed a sufficient record to

support the Patent Remedy Act. 527 U.S. at 639-41. Defendants' theory relies on a

footnote stating, "Florida provides remedies to patent owners for alleged

infringement." The footnote does not reach any conclusions regarding the

*sufficiency* of those remedies. *Id.* at 644 n.9. And that was the point—the thrust of

the Court's analysis was not that Florida provided sufficient procedures, but that

Congress failed to consider the issue in the first place. *Id.* at 644 ("Congress itself

said nothing about the existence or adequacy of state remedies ... ."). And, the

infringements considered in *Florida Prepaid* were "innocent or at worst

negligent"—i.e., infringements for which pre-deprivation process was impossible

and that likely did not violate due process in the first place. *Id.* at 645-46. Thus, to

the extent *Florida Prepaid* can be read to approve post-deprivation remedies with

respect to innocent or negligent infringement, *cf. Georgia*, 546 U.S. at 158, it

cannot be viewed as overruling long-standing precedent requiring pre-deprivation

process. *See Florida Prepaid*, 527 U.S. at 643 (favorably citing—not overruling—

*Zinermon* and *Hudson*).

43

In sum, Allen was entitled to pre-deprivation process because Defendants were in a position to provide it.

### b. Alternatively, North Carolina's post-deprivation remedies are insufficient

Where pre-deprivation process is required, "the availability of ... postdeprivation remedies is irrelevant." *Lawrence,* 151 F.3d at 1029. Regardless, Defendants' proposed remedies are insufficient.

To satisfy the Due Process "guarantee of fair procedure." *Zinermon*, 494 U.S. at 126, a procedure must be able to "fully compensate[]" the plaintiff for the claimed deprivation. *Parratt v. Taylor*, 451 U.S. 527, 544 (1981). Thus, a procedure that cannot provide complete relief is necessarily insufficient. *Id.; Logan*, 455 U.S. at 435-37 (state procedure inadequate where it "will never make the complainant entirely whole"). Remedies that are "speculative" or uncertain also fail to satisfy due process. *See Logan*, 455 U.S. at 435-37.

Defendants identify four purported state law remedies: (1) a contract claim, (2) the North Carolina Tort Claims Act, (3) a state takings claim, and (4) a "direct claim" for violations of the North Carolina Constitution. OB45-46. But Defendants do not explain how the facts alleged in the SAC support these claims, nor do they provide any analysis as to the sufficiency of the alleged remedies. Instead, they vaguely allude to these causes of action and then move on. *Id.* By failing to explain the basis for these claims, Defendants have forfeited the issue. *Erline*, 440 F.3d at

653 n.7 (conclusory remarks insufficient to raise argument on appeal). In any event, none of the cited causes of action is available, and none comes close to providing the "full" compensation to which Allen is entitled.

**Breach of Contract:**

A contract claim is not available since Defendants' infringement was unrelated to any contract. *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 608 (1997) (contract claim requires valid contract). While Defendants make a passing reference to Allen's 2013 settlement with the state ("the Agreement"), OB45, that contract cannot vindicate the alleged infringement.

First, the alleged infringement falls outside the bounds of the Agreement, which did not authorize—and in fact prohibited—Defendants' use and distribution of Allen's work. See JA130 ¶16(b); SAC ¶¶93. Where a copyright license is limited in scope and the licensee acts outside the allowed scope, the remedy lies in an infringement action—not an action for breach of contract. *Tattoo Art Inc. v. TAT Int'l LLC*, 498 F. App'x 341, 346 (4th Cir. 2012); *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008); *MDY Indus., LLC v. Blizzard Entmt., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010). Because the claimed infringement fell outside the (limited) scope of usage allowed by the Agreement, Allen cannot receive compensation on a breach of contract theory; that contract theory is preempted by federal copyright law. See *id*.

45

Second, many provisions of the Agreement expired in 2018 and so cannot support a contract claim with respect to any of the post-2018 infringements. JA131 ¶16(c) ("This ... section shall terminate after the 5th anniversary of the signing of this Agreement"); JA106 (listing infringements).

*Third*, the Agreement cannot support a breach of contract claim since Defendants repudiated the Agreement. SAC¶¶101-105, 116, 124-125 (Defendants declared the Agreement "void, illegal, and unenforceable."). This repudiation was backed by state law, which holds that "agreements are against public policy [and thus invalid] when they tend to the violation of a statute." *Glover v. Rowan Mut. Fire Ins. Co.*, 228 N.C. 195, 198 (1947). Having repudiated the contract and terminated their license, Defendants cannot now rely on that license to avoid Allen's copyright claims. *Rochlin v. P.S. W. Const. Co.*, 234 N.C. 443, 466 (1951) ("[A] party who repudiates the contract cannot take any advantage or benefit under it.").

*Fourth*, any contract claim would be preempted by the Copyright Act, 17 U.S.C. § 301, and would fall outside state jurisdiction, 28 U.S.C. § 1338, since the Agreement did not "materially modify the federal cause of action" and because the alleged breach would independently infringe. *Tart v. Walker*, 38 N.C. App. 500, 504 (1978); *Out of the Box Devs., LLC v. LogicBit Corp.*, 2012 WL 5356282, at *11 (N.C. Super. Oct. 30, 2012).

*Finally*, the remedies for breach of contract fall far short of what Allen would be entitled to under copyright law. Contract plaintiffs are limited to actual damages and must "show loss with a reasonable certainty." *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 18 (1968). When it comes to unauthorized use of copyrighted materials, this standard is exceedingly difficult to satisfy. Indeed, that is why the Copyright Act provides statutory damages in the first place. *Douglas v. Cunningham*, 294 U.S. 207, 209 (1935) (purpose of statutory damages is "to give the owner of a copyright some recompense ... in a case where the rules of law render difficult or impossible proof of damages or discovery of profits."). Absent statutory damages there is a serious risk that plaintiffs would only be able to recover nominal damages. *Id.*; *Gnossos Music v. Mitken, Inc.*, 653 F.2d 117, 118 (4th Cir. 1981) (statutory damages avoid the "difficult burden of proving actual damages"). This is particularly important when dealing, as here, with one-of-a-kind materials whose value can be difficult to ascertain (SAC¶72), with follow-on infringements that are difficult to track, particularly when much of the evidence is controlled by a non-compliant opposing party (SAC¶168). There is no ready means to assess how Defendants' infringement impacted the demand for Allen's work (SAC¶167). Thus, it cannot be said that a contract claim would make Allen whole. On the contrary, the value and availability of remedies for each of the infringements is uncertain, and so do not satisfy the Constitution's

guarantee of due process. *See Parratt*, 451 U.S. at 544 (full compensation required).

Defendants allude to Intersal's dispute with the State in *Intersal v. Wilson*. OB45. But that dispute did not affect Allen's interests. It centered on rights to museum exhibits and tours—which are not at issue here. *Intersal* did not involve copyright interests, nor could it, as those belong exclusively to Allen—and are preempted.

**North Carolina Tort Claims Act (NCTA):**

The NCTCA does not provide a cause of action. Instead, it simply waives immunity for tort claims alleging negligence. N.C. Gen. Stat. § 143-291. Allen's claims do not sound in tort, and Defendants have not identified an underlying cause of action that could serve as a predicate offense.

The NCTCA is further insufficient since it does not waive immunity for intentional acts, and fails to provide a sufficient remedy. *White v. Trew*, 366 N.C. 360, 363 (2013) (no waiver of immunity for intentional acts); *Logan*, 455 U.S. at 436-37 (tort suits do not provide sufficient process since they "will never make the complainant entirely whole"); *Weller v. Dep't of Soc. Servs. for Baltimore*, 901 F.2d 387, 394 (4th Cir. 1990) ("Ex post procedures are generally disapproved where the only remedy is an independent tort action."). Tort claims also suffer from the same damages issues discussed above with respect to contract claims. *Paris v. H.G. Fischer & Co.*, 221 N.C. 110, 129 (1942).

48

**State Takings Claim.**

Defendants cannot point to a takings claim as providing a sufficient remedy since they adopted (and prevailed on) the position that "Allen has no takings claim" with respect to the alleged infringements. JA189-190, Dkt. 114 at 22-23 (arguing that "display of an image or a few" cannot "amount[] to a taking"). While those arguments were made in the context of a federal takings claim, North Carolina's standards are not materially different. *See Finch v. Durham*, 325 N.C. 352, 365-66 (1989); *Camden Cnty. v. Ne. Cmty. Dev. Corp.*, 263 F. Supp. 3d 556, 563 (E.D.N.C. 2017).

To be sure, Allen contends that Defendants' conduct *does* amount to a taking under both state and federal law. But that position was rejected by the district court, which found that the acts giving rise to infringement did not constitute a taking. JA292-297.

Defendants' allegation that Allen has a cognizable state-law takings claim provides the easiest path to affirmance: the Court can affirm the district court's order that Defendants are not entitled to sovereign immunity, but on the basis of a takings + copyright *Georgia* theory, rather than a due process + copyright theory. *United States v. Flores-Granados*, 783 F.3d 487, 491 (4th Cir. 2015) ("We are entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court.").

49

But if the Court wonders whether Allen has a viable takings claim in state court, the answer is that despite the similar interpretations of what such a claim involves, Allen's own claims cannot be pursued in state court, for each of two reasons: lack of jurisdiction, and preemption.

<u>State Courts Lack Jurisdiction.</u> Federal courts have exclusive jurisdiction over all claims "arising under" the Copyright Act. 28 U.S.C. § 1338. A claim "arises under" the Copyright Act if it (1) "requir[es] construction of the Copyright Act," or (2) "seeks a remedy expressly granted by the Copyright Act." 13 Fed. Prac. & Proc. Juris. § 3582 (3d ed.) & n.31; *see also Christopher v. Cavallo*, 662 F.2d 1082, 1083 (4th Cir. 1981). Both conditions are satisfied here (even though only one is required). *See Dillon v. Stafford*, 2020 WL 7863608, at *14 (N.C. Super. Dec. 30, 2020) (state court lacked jurisdiction over copyright claim).

<u>State Claims Would Be Preempted.</u> Allen's takings claims would also be preempted by Copyright Act, since it "falls within the subject matter of copyright law" and would be "equivalent" to his copyright claims. 17 U.S.C. § 301; *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 309 (4th Cir. 2012); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 230 (4th Cir. 1993) (describing "equivalent" test).

50

**A "Direct Claim" for Violations of the North Carolina Constitution:**

"[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State." *Corum v. Univ. of N.C.*, 330 N.C. 761, 782 (1992). To prevail on a *Corum* claim, plaintiffs must identify "a particular constitutional right" that has been violated. *Askew v. Kinston*, 386 N.C. 286, 293 (2024); *Ware v. Fort*, 124 N.C. App. 613, 616 (1996) ("[T]here can be no state constitutional claim ... absent a violation of ... some provision of the North Carolina Constitution."). Defendants have not identified such a predicate violation, and it appears that none exists. Absent such a violation, there is no "direct claim."

*Corum* claims also lack a sufficient remedy. As discussed above, to satisfy due process, a procedure must have the ability to "make the complainant ... whole." Under *Corum*, however, plaintiffs are expressly *not* entitled to a "complete remedy" or to "the remedy that is necessary to make the plaintiff whole." *Washington v. Cline*, 385 N.C. 824, 828-29 (2024). Instead, *Corum* requires courts to limit their relief to "the *least* intrusive remedy." *Id.* (emphasis added); *Corum*, 330 N.C. at 784 (same). That does not satisfy due process. *See Parratt*, 451 U.S. at 544; *Logan*, 455 U.S. at 435-37.

51

Finally, any purported *Corum* claim would necessarily arise under the Copyright Act, and so would fall in the exclusive jurisdiction of the federal courts and would be preempted by the Copyright Act.

In sum, none of Defendants' purported state claims provide sufficient process.

### C.    *Georgia* Applies to Copyright Claims

*Georgia* sets out a simple framework: sovereign immunity does not apply where government conduct violates both a federal statute and the Constitution. 546 U.S. at 157-59. This framework applies here, since Defendants' use of Allen's work violated both the Copyright Act, *supra* at III.A, and his due process rights, *supra* at III.B.

Defendants contend *Georgia* is unavailable because copyright infringement can never violate due process. OB53-54. In their view, the same conduct cannot violate both the Copyright Act and the Due Process Clause, since copyright claims are based on affirmative action (copying, distributing), while due process claims require a *failure* to act (failing to provide sufficient process). *Id.* Defendants contend this difference violates a purported "exact match" requirement set out in *Georgia*. OB22.

Defendants' position fails both because they expressly waived this argument at the Supreme Court and because their argument conflicts with the Supreme Court's holding, misreads *Georgia*, and misreads due process.

*First*, Defendants expressly waived this position at the Supreme Court by conceding—both in briefing and at oral argument—that copyright infringement can, indeed, violate due process. *See supra,* Stmt §IV. Defendants also conceded—contrary to their current position—that *Georgia* can apply to claims of copyright infringement. *Id.* And they used that position to secure victory— Defendants assured the Court that it need not worry about the consequences of ruling for the state, since victims of unconstitutional infringements could use *Georgia* to pursue their claims in federal court. *See supra,* Stmt §IV, S. Ct. Tr. at 39-41.

Parties are bound by concessions made in briefing and at oral argument and may not claim error based on positions they have affirmatively relinquished. *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) (waived arguments not reviewable on appeal); *Hilao v. Estate of Marcos*, 393 F.3d 987, 993 (9th Cir. 2004) (parties bound by concessions made in briefing and at oral argument).

Such concessions also create judicial estoppel. *Allen v. Zurich*, 667 F.2d 1162, 1166 (4th Cir. 1982) (parties "may be properly precluded from adopting a legal position in conflict with one earlier taken in the same or related litigation"). Having prevailed, Defendants cannot now abandon their position. *Zurich*, 667 F.2d at 1167.

*Second*, the Supreme Court rejected the supposition that copyright infringement cannot violate due process. The Court explained that infringement violates due process where it is intentional and where the State fails to provide an adequate remedy. *Allen v. Cooper*, 589 U.S. at 261-62. While the Court ultimately held CRCA invalid with respect to prophylactic abrogation, that holding was based strictly on deficiencies in the Congressional record—not on any purported "mismatch" between copyrights and Due Process. *Id.* at 263-66.

*Third*, Defendants' assertion that copyright infringement cannot violate due process misreads the Due Process Clause. Due process rights do not exist in the abstract but are determined by corresponding substantive rights. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("[D]ue process ... is not a technical conception with a fixed content unrelated to time, place and circumstances."). For this reason, there can be no violation of due process absent a corresponding deprivation of life, liberty, or property. *See id.* Accordingly, the essence of a due process violation is not a lack of process itself, but rather a *deprivation* effected without sufficient process. U.S. Const. amend. XIV, §1 (prohibiting deprivations without due process); *Parratt*, 451 U.S. at 537. Viewed in this light, the lack of process is a *characteristic* of an alleged deprivation, rather than an independent element evaluated on its own. *See Mathews*, 424 U.S. at 335. Allen's copyright and due process claims arise from the "same" conduct, since the alleged infringement *is* the claimed deprivation.

*Finally*, *Georgia* does not require an "exact" match between statutory and constitutional claims. Because statutory and constitutional claims invariably have different elements, there will always be room to draw distinctions that preclude an "exact" match, but courts nonetheless regularly find *Georgia* violations. The real question is whether challenged government conduct violates both a federal statute and the Constitution. *Georgia*, 546 U.S. at 157-59. Answering the question requires a general inquiry as to whether the violations broadly relate to the same conduct—not whether the statutory and constitutional violations match precisely. *Id.* Thus, in *Durham v. Kelley*, the Third Circuit held *Georgia* is satisfied where a plaintiff alleges a "companion constitutional claim *arising from* the same facts" as the statutory claim. 82 F.4th 217, 228 (3d Cir. 2023) (emphasis added). And in *Fauconier v. Clarke*, the Court asked whether the plaintiff "plausibly alleged violations of both [the ADA] and the Fourteenth Amendment" (with no mention of any "exact" match between the two). 966 F.3d 265, 280 (4th Cir. 2020). The Fifth Circuit frames the inquiry even more permissively, as whether a plaintiff's statutory claims "*imply* a violation of the Fourteenth Amendment." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1035 (5th Cir. 2022) (emphasis added).

Defendants have not identified any case where a court has actually applied the so-called "matching" requirement to defeat a *Georgia* theory. At most, they

point to passing dicta where a court mused that it was "unclear" whether *Georgia*

applied to copyright claims, but found it unnecessary to actually consider the issue.

OB53 (citing *NABP*, 633 F.3d at 1316 n.32). *See Payne v. Taslimi*, 998 F.3d 648,

654 (4th Cir. 2021) (dicta not binding). Defendants' district court cases are

likewise unpersuasive, merely parroting *NABP's* dicta without additional

reasoning.

Defendants may claim that they are not asserting a categorical objection to

*Georgia*-based copyright arguments, but instead seek to show that the facts alleged

*here* fail to satisfy *Georgia's* requirements. But Defendants' arguments are not tied

to the SAC, as they relate to copyright claims more generally. *See, e.g.*, OB49, 54.

For example, Defendants contend that "the lack of a pre-deprivation hearing" (i.e.,

a due process violation) "does not align with the federal statutory violation" (i.e.,

copyright infringement). OB49. That argument squarely conflicts with Defendants'

Supreme Court concessions and would necessarily preclude every *Georgia*-based

copyright-due process claim.

### D.    Allen Preserves His Challenge to Sovereign Immunity Law

The text of the Eleventh Amendment states that federal courts may not

exercise jurisdiction over suits "prosecuted against one of the United States by

Citizens of *another* State." U.S. Const. amend. XI (emphasis added). For over 130

years, the Supreme Court has ignored this text and interpreted the amendment to

block same-state citizen suits. *See generally Alden v. Maine*, 527 U.S. 706 (1999) (recounting history). These decisions lack textual and historical support, and ought to be reversed. Accordingly, Allen preserves for appeal his argument that the Eleventh Amendment does not allow states to claim immunity in response to claims asserted by their own citizens.

## CONCLUSION

For the reasons set out above, Defendants' appeal with respect to their first issue should be dismissed and the district court's order below should be affirmed.

## REQUEST FOR ORAL ARGUMENT

Plaintiff requests that the Court set this case for oral argument, given the novelty of the issues, their interest and their complexity.

Respectfully submitted this the 27th day of May, 2025.

/s/ G. Jona Poe, Jr.
G. Jona Poe, Jr.
 N.C. State Bar No. 5920
POE LAW FIRM, PLLC.
*Attorney for Plaintiffs-Appellees*
3202 Guess Rd.
PO Box 15455
Durham, NC 27704
Telephone: (919) 471-4015
Facsimile: (919) 471-4035
joe@poelaw.com

/s/ Susan Freya Olive
Susan Freya Olive
 N.C. State Bar No. 7252
Olive & Olive, P.A.
Attorneys for Plaintiff
P.O. Box 2049
Durham, NC 27702
Telephone: (919) 683-5514
Facsimile: (919) 688-3781
emailboxednc@oliveandolive.com

Adam Adler
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (650) 623-1480
aadler@reichmanjorgensen.com

Elliot Sol Abrams
CHESHIRE PARKER SCHNEIDER, PLLC
133 Fayetteville Street, Suite 400
Raleigh, NC 27601
(919) 833-3114
elliot.abrams@cheshirepark.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-face requirements of
Federal Rule of Appellate Procedure 32(a)(5) and the type-volume limitations of
Rule 32(a)(7)(B). The brief was prepared using **Microsoft Word** and the text of
the brief is in **14-point Times New Roman font.** Excluding the parts of the brief
described in Rule 32(f), namely cover page, disclosure statement, table of contents,
table of citations, statement regarding oral argument, signature block, certificates
of counsel, addendum, and attachments, the brief contains **12,916** words, as
counted by Microsoft Word.

/s/ Susan Freya Olive
Susan Freya Olive